1  Jennifer Yu Sacro, SBN: 208988
   E-Mail: jsacro@sacrowalker.com
2  Thomas J. Placido, SBN: 331404
3  E-Mail: tplacido@sacrowalker.com
   SACRO & WALKER LLP
4  700 North Brand Boulevard, Suite 610
5  Glendale, California 91203
   Tel.: (818) 721-9597; Fax: (818) 721-9670
6
7  Attorneys for Plaintiff
   MOUNT VERNON FIRE
8  INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MOUNT VERNON FIRE INSURANCE COMPANY, a Nebraska corporation, | ) Case No. ) ) **PLAINTIFF MOUNT VERNON FIRE** |
| Plaintiff, | ) **INSURANCE COMPANY'S** ) **COMPLAINT FOR DECLARATORY** ) **JUDGMENT** |
| vs. | ) ) |
| THE KELEMEN COMPANY INC., a California corporation; TIBOR KELEMEN, an individual; and DOES 1-10, inclusive, | ) ) ) ) ) |
| Defendants. | ) ) ) |

- 1 -
COMPLAINT FOR DECLARATORY RELIEF

Plaintiff MOUNT VERNON FIRE INSURANCE COMPANY ("Mount Vernon") alleges as follows:

## THE PARTIES

1. Mount Vernon is an insurance company incorporated under the laws of the State of Nebraska, with its principal place of business in Pennsylvania, and doing business in California.

2. On information and belief, defendant The Kelemen Company Inc. is a California corporation with its principal place of business in California, and doing business in California.

3. On information and belief, defendant Tibor Kelemen is an individual residing in California and is the founder and chief executive officer of The Kelemen Company Inc.

4. Mount Vernon is ignorant of the true names and capacities of defendants fictitiously named herein as DOES 1 through 10, inclusive, and therefore Mount Vernon sues those defendants by such fictitious names. Mount Vernon will amend its Complaint to allege the true names and capacities when ascertained. Each of the fictitiously named defendants is responsible in some manner for the acts and omissions alleged herein that require the relief sought by Mount Vernon. At all times relevant to this action, each defendant, including those fictitiously named, either was the agent, servant, employee, partner, joint venture, parent organization, subsidiary, predecessor, successor, or surety of the other defendants and was acting within the scope of that contract, agency, employment, partnership, venture, parent-subsidiary relationship, precession, succession, or suretyship, with the knowledge, consent, direction and/or ratification of each of the other defendants in doing the acts alleged in this Complaint, and/or was an additional insured that received benefits under the Mount Vernon insurance policies at issue in this Complaint.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under the Declaratory

1 Judgment Act, 28 U.S.C. § 2201(a), because it involves a case of actual controversy within its jurisdiction seeking a declaration regarding the rights and obligations of Mount Vernon and Defendants.

6. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship between Mount Vernon, on the one hand, and each of the defendants, on the other hand, at the time of the filing of this Complaint. The amount in controversy, exclusive of court costs, exceeds $75,000.

7. Venue is proper because Mount Vernon delivered its relevant insurance policy to The Kelemen Company Inc., its named insured, in Orange County, California.

**FACTS**

**A. Kelemen Company's Insurance Applications Provide Material Misrepresentations and/or Conceal Material Information**

8. Mount Vernon issued policy no. EPL2556976D, with effective dates of January 16, 2022 to January 16, 2023 (the "2022-2023 Policy"), to The Kelemen Company Inc. ("Kelemen Company"). The Policy provides employment practices liability coverage.

9. The 2022-2023 Policy is the fourth annual renewal of policy no. EPL2556976 (the "Initial Policy"), which Mount Vernon issued to Kelemen Company with effective dates of January 16, 2018 to January 16, 2019. True and correct copies of the Initial Policy and each of the four subsequent renewals, including the 2022-2023 Policy, are attached hereto as Exhibits A through E and incorporated by reference. The Initial Policy and all subsequent renewals of the Initial Policy, including the 2022-2023 Policy, are collectively referred to as the "Policies".

10. In January 2018, during the underwriting period leading to the issuance of the Initial Policy, Kelemen Company submitted to Mount Vernon an Employment Practices Liability Application through its broker (the "Broker Application"). The Broker Application was dated January 18, 2018 and signed by Tam Doan on behalf

of Kelemen Company as its "Op[erations] Manager." A true and correct copy of the relevant portions of the Broker Application is attached hereto as Exhibit F and incorporated herein by reference.

11. Among other questions, the Broker Application asked:

> 7. Within the last 5 years, has any employment related, or third party discrimination, or third party harassment inquiry, complaint, notice of hearing, claim or suit been made against any entity proposed for insurance or any person proposed for insurance in the capacity of either director, officer, member (if an LLC), or employee of any entity proposed for insurance? If "Yes", complete USLI Claim Supplement for each claim.

(Exhibit F, p. 145.)

12. Kelemen Company checked the box designating a response of "No" to question number 7 on the Broker Application. (Exhibit F, p. 145.)

13. In signing the Broker Application on behalf of Kelemen Company, Tam Doan represented, acknowledged, and agreed to the following:

> The signer of this application acknowledges and understands that the information provided in this Application is material to the Insurer's decision to provide the requested insurance and is relied on by the Insurer in providing such insurance. The signer of this application represents that the information provided in this Application is true and correct in all matters. The signer of this Application further represents that any changes in matters inquired about in this Application occurring prior to the effective date of coverage, which render the information provided herein untrue, incorrect or inaccurate in any way will be reported to the Insurer immediately in writing. The Insurer reserves the right to

> modify or withdraw any quote or binder issued if such changes are material to the insurability or premium charged, based on the Insurer's underwriting guides. The Insurer is hereby authorized, but not required, to make any investigation and inquiry in connection with the information, statements and disclosures provided in this Application. The decision of the Insurer not to make or to limit any investigation or inquiry shall not be deemed a waiver of any rights by the Insurer and shall not estop the insurer from relying on any statement in this Application in the event the Policy is issued. It is agreed that this Application shall be the basis of the contract should a policy be issued and it will be attached and become a part of the Policy.

(Exhibit F, p. 146.)

14. Tam Doan signed the Broker Application immediately following this acknowledgment paragraph and gave her title as the "Op[erations] Manager" of Kelemen Company. (Exhibit F, p. 146.)

15. In reliance upon Kelemen Company's representations in the Broker Application, Mount Vernon issued the Initial Policy on January 22, 2018. (Exhibit A., p. 17.) The Initial Policy was retroactively given effective dates of January 16, 2018 to January 16, 2019, at Kelemen Company's request through Kelemen Company's insurance broker. A true and correct copy of relevant portions of the email correspondence between Kelemen Company's insurance broker and Mount Vernon verifying the retroactive effective date of January 16, 2018 upon receipt of the Broker Application is attached hereto as Exhibit G and incorporated herein by reference.

16. In January 2019, during the underwriting period leading to the first renewal of the Initial Policy, Kelemen Company submitted to Mount Vernon an Employment Practices Liability Application through its broker (the "First Renewal Application"). The First Renewal Application was dated January 16, 2019 and again

signed by Tam Doan on behalf of Kelemen Company. A true and correct copy of relevant portions of the First Renewal Application is attached hereto as Exhibit H and incorporated herein by reference.

17. Among other questions, the First Renewal Application asked:

> 7. Within the last five years, has any employment related, or third party discrimination, or third party harassment inquiry, complaint, notice of hearing, claim or suit been made against any entity proposed for insurance or any person proposed for insurance in the capacity of either director, officer, member (if an LLC), or employee of any entity proposed for insurance? If "Yes," complete USLI Claim Supplement for each claim.

(Exhibit H, p. 156.)

18. Kelemen Company checked the box designating a response of "No" to question number 7 on the First Renewal Application. (Exhibit H, p. 156.)

19. In signing the First Renewal Application on behalf of Kelemen Company, Tam Doan represented, acknowledged, and agreed to the following:

> The signer of this application acknowledges and understands that the information provided in this Application is material to the Insurer's decision to provide the requested insurance and is relied on by the Insurer in providing such insurance. The signer of this application represents that the information provided in this Application is true and correct in all matters. The signer of this Application further represents that any changes in matters inquired about in this Application occurring prior to the effective date of coverage, which render the information provided herein untrue, incorrect or inaccurate in any way will be reported to the Insurer immediately in writing. The Insurer reserves the right to

modify or withdraw any quote or binder issued if such changes are material to the insurability or premium charged, based on the Insurer's underwriting guides. The Insurer is hereby authorized, but not required, to make any investigation and inquiry in connection with the information, statements and disclosures provided in this Application. The decision of the Insurer not to make or to limit any investigation or inquiry shall not be deemed a waiver of any rights by the Insurer and shall not estop the insurer from relying on any statement in this Application in the event the Policy is issued. It is agreed that this Application shall be the basis of the contract should a policy be issued and it will be attached and become a part of the Policy.

(Exhibit H, p. 158.)

20. Tam Doan signed the First Renewal Application following this acknowledgment paragraph and gave her title as "Director" of Kelemen Company. (Exhibit H, p. 158.)

21. In reliance upon Kelemen Company's representations in the Broker Application and the First Renewal Application, Mount Vernon continually renewed the Initial Policy through January 16, 2023.

22. Each of the Policies contains the following representations by Kelemen Company (boldface in original):

### XI. REPRESENTATIONS AND SEVERABILITY

A. The **Insured** represents that the particulars and statements contained in the **Application** are true and agree that (1) those particulars and statements are the basis of this Policy and are to be considered as incorporated into and constituting a part of the Policy; (2) those particulars and statements are

material to the acceptance of the risk assumed by the **Company**; and (3) the Policy is issued in reliance upon the truth of such representations.

(Exhibit A, p. 39; Exhibit B, p. 62; Exhibit C, p. 84; Exhibit D, p. 110; Exhibit E, p. 139.)

23. The Policies further define "**Application**" as follows:

**III. DEFINITIONS**

**A. "Application"** means:

**(1)** an application and any material submitted for this Policy and

**(2)** an application(s), and any material submitted, for all previous Policies issued by the **Company** providing continuous coverage until the inception date of this Policy.

The content of (1) and (2) above is incorporated by reference in this Policy as if physically attached hereto.

(Exhibit A, p. 32; Exhibit B, p. 55; Exhibit C, p. 77; Exhibit D, p. 103; Exhibit E, p. 132.)

24. Contrary to Kelemen Company's representations in the Broker Application and the First Renewal Application, Kelemen Company CEO Tibor Kelemen and Kelemen Company Operations Manager/Director Tam Doan were named as defendants by a former employee at their prior company, Wind Water Realty, in an employment related, third party discrimination, and third party harassment lawsuit in 2015. Specifically, former employee June Nagano filed a lawsuit alleging such claims against Tibor Kelemen, Tam Doan, Wind Water Realty, and other defendants on July 10, 2015, entitled, *June Nagano v. Wind Water Realty, Inc., Wind Water Realty Advisers, Inc., Wind Water Development Advisers, Inc.,*

- 8 -
COMPLAINT FOR DECLARATORY RELIEF

*Tibor Kelemen, and Tam Doan*; Orange County Superior Court Case No. 30-2015-00797817-CU-WT-CJC (the "Nagano Lawsuit").

25. Nagano's first amended complaint, dated September 9, 2015 (the "Nagano FAC"), asserts causes of action for assault, sexual battery, battery, false imprisonment, sexual harassment, sex discrimination, racial discrimination, intentional infliction of emotional distress, retaliation, and wrongful termination. A true and correct copy of the Nagano FAC is attached hereto as Exhibit I and is incorporated herein by reference.

26. As evidenced by the 2015 Nagano Lawsuit against prospective individual insureds CEO Tibor Kelemen and Operations Manager/Director Tam Doan, Kelemen Company's statements in the Broker Application and the First Renewal Application that there had been no employment related, third party discrimination, or third party harassment claims or suits within the last five years against any person proposed for insurance in the capacity of director, officer, or employee of Kelemen Company was neither true nor correct.

27. As specified in the Policy Representations and the application acknowledgment paragraphs set forth above, the information provided in the Broker Application and the First Renewal Application was material to Mount Vernon's decision to issue the Policies.

28. In contrast to the facts presented in the Broker Application and First Renewal Application, the true facts increased the risk and exposure to Mount Vernon under the Policies. Had Mount Vernon been aware of the true facts, it would not have issued the Policies at all.

**B.** **Mount Vernon First Learns of Nagano Lawsuit through the Current Underlying Actions and Rescinds the Policies**

29. In 2022, Kelemen Company and Tibor Kelemen were named as defendants in two separate but related lawsuits for employment related, workplace harassment, workplace discrimination, and wrongful termination claims presently

COMPLAINT FOR DECLARATORY RELIEF

pending in the Superior Court of California for the County of Orange: (1) *Araceli Ramirez v. The Kelemen Company, et al.*, Case No. 30-2022-01259089-CU-WT-CJC; and (2) *Eric Grimes v. The Kelemen Company, et al.*, Case No. 30-2022-01259060-CU-WT-CJC (collectively, the "Underlying Actions"). Mount Vernon initially agreed to provide Kelemen Company and Tibor Kelemen a defense in the Underlying Actions pursuant to the 2022-2023 Policy.

30. In connection with the defense of the Underlying Actions, Mount Vernon became aware of the existence of the Nagano Lawsuit for the first time. In or about April 2023, Mount Vernon first received a copy of the Nagano FAC. After Mount Vernon learned about the Nagano Lawsuit and received the Nagano FAC, Mount Vernon issued a Notice of Rescission. The Notice of Rescission also tendered to Kelemen Company a return of the premiums paid in connection with the Policies, with interest. Attached hereto as Exhibit J is a true and correct copy of the Notice of Rescission and relevant portions of the premium return check, dated May 31, 2023.

31. Notwithstanding Mount Vernon's rescission of the Policies, subject to a full and complete reservation of rights, Mount Vernon continues to defend Kelemen Company and Tibor Kelemen in the Underlying Actions.

32. By virtue of the Policy Representations and because of the material change in risk between the true facts and the facts as set forth in the Broker Application and First Renewal Application, the Policies are void *ab initio* and Mount Vernon is entitled to rescind the Policies. Accordingly, Mount Vernon is not obligated to provide coverage for the Underlying Actions, and is further entitled to recover from Kelemen Company and Tibor Kelemen the amount it has spent in connection with Kelemen Company and Tibor Kelemen's defenses in the Underlying Actions.

## FIRST CAUSE OF ACTION

(Rescission against Kelemen Company, Tibor Kelemen, and Does 1 through 5)

33. Mount Vernon realleges and incorporates by reference each and every allegation contained in the preceding paragraphs 1 through 32 as though fully set forth

herein.

34. During the underwriting of the Initial Policy, Kelemen Company made the following material misrepresentations of fact and/or concealed the following material facts: Kelemen Company inaccurately represented to Mount Vernon that no "employment related, or third party discrimination, or third party harassment inquiry, complaint, notice of hearing, claim or suit [had] been made against any entity proposed for insurance or any person proposed for insurance in the capacity of either director, officer, member (if an LLC), or employee of any entity proposed for insurance" within the five years prior to the Broker Application. In fact, within the relevant timeframe and less than three years prior to the Broker Application, Kelemen Company CEO Tibor Kelemen and Kelemen Company Operations Manager/Director Tam Doan had been sued by their former employee, June Nagano, for employment related, sexual harassment, and racial discrimination claims.

35. During the underwriting of the first renewal of the Initial Policy, Kelemen Company further made the following material misrepresentations of fact and/or concealed the following material facts: Kelemen Company inaccurately represented to Mount Vernon that no "employment related, or third party discrimination, or third party harassment inquiry, complaint, notice of hearing, claim or suit [had] been made against any entity proposed for insurance or any person proposed for insurance in the capacity of either director, officer, member (if an LLC), or employee of any entity proposed for insurance" within the five years prior to the First Renewal Application. In fact, within the relevant timeframe and less than four years prior to the First Renewal Application, Kelemen Company CEO Tibor Kelemen and Kelemen Company Operations Manager/Director Tam Doan had been sued by their former employee, June Nagano, for employment related, sexual harassment, and racial discrimination claims.

36. The aforementioned misrepresentations and/or concealment of facts resulted in a material increase in the risk undertaken by Mount Vernon in issuing the

Policies.

37. Kelemen Company made the foregoing misrepresentations and/or concealed the foregoing material facts with the full knowledge and expectation that Mount Vernon would rely on said representations, which were a material part of Mount Vernon's evaluation of the risk and Mount Vernon's decision to issue each one of the Policies with the terms set forth in the Policy and for the premium charged by Mount Vernon. Separately, Kelemen Company should have known that the foregoing facts were a material part of Mount Vernon's evaluation of the risk and Mount Vernon's decision to issue the Policies with the terms set forth in the Policies and for the premium charged by Mount Vernon and had a duty to affirmatively disclose such information.

38. Had Mount Vernon known the true facts, it would not have issued any of the Policies at all.

39. On May 31, 2023, Mount Vernon issued to Kelemen Company a Notice of Rescission of the Policies. (Exhibit J, pp. 210-217.) The Notice of Rescission also tendered to Kelemen Company a return of the premiums paid in connection with the Policies, with interest.

40. An actual and present controversy has arisen between Mount Vernon on the one hand, and Defendants on the other hand, with respect to Mount Vernon's rescission of the Policies. Mount Vernon contends that it is entitled to rescind each one of the Policies due to Kelemen Company's material misrepresentations and/or concealment of material information as described herein, which resulted in materially added, increased, or changed risk. Mount Vernon is informed and believes and based thereon alleges that Defendants contend that Mount Vernon is not entitled to rescind any of the Policies.

41. Mount Vernon seeks a judicial order or declaration upholding Mount Vernon's rescission of the Policies, and deeming each of the Policies as void *ab initio*. Mount Vernon also seeks a judicial order or declaration that it is entitled to

reimbursement from Kelemen Company and Tibor Kelemen for the full amount of attorney's fees and other costs, totaling in excess of $75,000, incurred by Mount Vernon in connection with the defense it provided to Kelemen Company and Tibor Kelemen with respect to the Underlying Actions. Mount Vernon further seeks a judicial order or declaration finding that Mount Vernon's tender to Kelemen Company of a return of the premiums paid in connection with the Policies was proper. Finally, Mount Vernon seeks a judicial order that because it has no defense or indemnity obligation with respect to the Underlying Actions, Mount Vernon may withdraw from its defense of Kelemen Company and Tibor Kelemen in the Underlying Actions.

## SECOND CAUSE OF ACTION

(Declaratory Judgment against All Defendants)

42. Mount Vernon realleges and incorporates by reference each and every allegation contained in the preceding paragraphs 1 through 41 as though fully set forth herein.

43. Alternatively, pursuant to the terms of the Policies, the Broker Application and First Renewal Application, and/or applicable law, Mount Vernon is entitled to cancel the Policies and/or deny coverage under the Policies for the Underlying Actions due to Kelemen Company's breach of the Policies' Section XI. Representations and Severability through its material misrepresentations as described herein, which resulted in materially added, increased, or changed risk.

44. An actual and present controversy has arisen between Mount Vernon on the one hand, and Defendants on the other hand, with respect to Mount Vernon's right to cancel the Policies and/or deny coverage under the Policies for the Underlying Actions. Mount Vernon contends that it is entitled to cancel the Policies and/or deny coverage under the Policies for the Underlying Actions due to Kelemen Company's material misrepresentations as described herein, which resulted in materially added, increased, or changed risk. Mount Vernon is informed and believes and based thereon

alleges that Defendants contend that Mount Vernon is not entitled to cancel the Policies and/or deny coverage under the Policies for the Underlying Actions.

45. Mount Vernon seeks a judicial determination and declaration of the parties' respective rights and duties to one another, and specifically that Mount Vernon may cancel the Policies and/or deny coverage under the Policies for the Underlying Actions pursuant to their terms and/or applicable law due to Kelemen Company's breach of the Policies' Section XI. Representations and Severability through its material misrepresentations as described herein, which resulted in materially added, increased, or changed risk. Further, Mount Vernon seeks a judicial determination that it is entitled to reimbursement from Kelemen Company and Tibor Kelemen for the full amount of attorney's fees and other costs, totaling in excess of $75,000, incurred by Mount Vernon in connection with the defenses it provided to Kelemen Company and Tibor Kelemen with respect to the Underlying Actions. Finally, Mount Vernon is entitled to a judicial order that because it has no defense or indemnity obligation with respect to the Underlying Actions, Mount Vernon may withdraw from its defense of Kelemen Company and Tibor Kelemen in the Underlying Actions.

## **PRAYER FOR RELIEF**

WHEREFORE, Mount Vernon prays for the following relief against Defendants:

1. For a judicial order or declaration as follows:

    a. That Mount Vernon has validly rescinded the Policies as void *ab initio*;

    b. That Mount Vernon is entitled to reimbursement from Kelemen Company and Tibor Kelemen for the full amount of attorney's fees and other costs incurred by Mount Vernon in connection with the defenses it provided to Kelemen Company and Tibor Kelemen with respect to the Underlying Actions;

   c. That Mount Vernon's tender to Kelemen Company of a return of the premiums paid in connection with the Policies was proper; and

   d. That because Mount Vernon has no defense or indemnity obligation with respect to the Underlying Actions, it may withdraw from its defense of Kelemen Company and Tibor Kelemen in the Underlying Actions;

  2. Alternatively, for a judicial declaration that that Mount Vernon is entitled to cancel the Policies and/or deny coverage under the Policies for the Underlying Actions due to Kelemen Company's breach of the Policies' Section XI. Representations and Severability through its material misrepresentations as described herein, which resulted in materially added, increased, or changed risk.  Further, Mount Vernon is entitled to reimbursement from Kelemen Company and Tibor Kelemen for the full amount of attorney's fees and other costs incurred by Mount Vernon in connection with the defenses it provided to Kelemen Company and Tibor Kelemen with respect to the Underlying Actions.  Finally, because Mount Vernon has no defense or indemnity obligation with respect to the Underlying Actions, it may withdraw from its defense of Kelemen Company and Tibor Kelemen in the Underlying Actions;

  3. For an order awarding Mount Vernon's reasonable court costs; and

  4. For any other relief this Court deems just and proper.

DATED:  June 9, 2023   SACRO & WALKER LLP

By: /s/ Jennifer Yu Sacro
Jennifer Yu Sacro
Thomas J. Placido
Attorneys for Plaintiff
MOUNT VERNON FIRE
INSURANCE COMPANY