# EXHIBIT C

Exhibit C
Page 65

EPL2556976A
Renewal of Number

**POLICY DECLARATIONS**

**No. EPL2556976B**

**Home Office Copy**

# Mount Vernon Fire Insurance Company
**1190 Devon Park Drive, Wayne, Pennsylvania 19087**
A Member Company of United States Liability Insurance Group

NAMED INSURED AND ADDRESS:
**KELEMEN COMPANY, LLC**
**19100 VON KARMAN AVE, STE 480**
**IRVINE, CA 92612**

POLICY PERIOD: (MO. DAY YR.)   From:  01/16/2020  To:  01/16/2021

12:01 A.M. STANDARD TIME AT YOUR
MAILING ADDRESS SHOWN ABOVE

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.

|  | PREMIUM |
|---|---|
| Employment Practices Liability Insurance | $2,980.00 |
| Stamping Fee | $7.45 |
| Surplus Lines Tax | $89.40 |
| **TOTAL:** | **$3,076.85** |

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue

## See Endorsement EOD (1/95)

Agent:   **AMWINS INSURANCE BROKERAGE LLC (REDONDO BEACH) (4710)**
**435 N. Pacific Coast Highway, Suite 200**
**Redondo Beach, CA  90277**

Broker:

Issued:  **12/26/2019 9:26 AM**

By: _Thomas P. Nerney_
Authorized Representative

UPD (08-07)

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Exhibit C
Page 66

# EXTENSION OF DECLARATIONS

**Policy No. EPL2556976B**

Effective Date:   **01/16/2020**

12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS

**FORMS AND ENDORSEMENTS**

**The following forms apply to the policy**

| Endt# | Revised | Description of Endorsements |
|---|---|---|
| 2110 | 04/15 | Service Of Suit |
| EPL-125 | 09/07 | Property Management Clarification Endorsement |
| EPL-148 | 09/07 | Retroactive Date Endorsement |
| EPL-163 | 05/09 | Punitive Damages Exclusion |
| EPL-169 | 11/13 | Amended Notice/Claim And Circumstance Reporting Provisions |
| EPL-J | 09/07 | Employment Practices Liability Insurance Policy |
| Jacket | 07/19 | Policy Jacket |

Exhibit C
Page 67

**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART DECLARATIONS**

**PLEASE READ YOUR POLICY CAREFULLY.**

**THIS IS A CLAIMS MADE POLICY COVERAGE FORM AND UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS FORM IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD, OR THE EXTENSION PERIOD, IF APPLICABLE.  DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION.**

**NOTICE: DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION.**

**No.  EPL2556976B**

Effective Date:  **01/16/2020**

12:01 AM STANDARD TIME

ITEM I. PARENT ORGANIZATION AND PRINCIPAL ADDRESS

**KELEMEN COMPANY, LLC**
**19100 VON KARMAN AVE, STE 480**
**IRVINE, CA 92612**

ITEM II. POLICY PERIOD: (MM/DD/YYYY)  From:  01/16/2020  To:  01/16/2021

### Employment Practices Liability

| | | |
|---|---|---|
| ITEM III. LIMITS OF LIABILITY | **$1,000,000** | EACH CLAIM |
| | **$1,000,000** | IN THE AGGREGATE |
| ITEM IV. RETENTION: | **$10,000** | EACH CLAIM |
| ITEM V. PREMIUM: | **$2,980** | |
| ITEM VI. RETROACTIVE DATE: | **01/16/2018** | |
| ITEM VII. CO-INSURANCE: | **0.00%** | |

ITEM VIII. Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:
**See Endorsement EOD (01/95)**

**THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit C
Page 68

**This page has been intentionally left blank.**

Exhibit C
Page 69

## Service Of Suit

Pursuant to any statute of any state, territory or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured(s) or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the below named as the person to whom the said officer is authorized to mail process or a true copy thereof.

It is further agreed that service of process in such suit may be made upon the General Counsel of the Company, or his nominee, at 1190 Devon Park Drive, Wayne, Pennsylvania 19087 and that in any suit instituted against any one of them upon this policy, the Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.

Exhibit C
Page 70

**UNITED STATES LIABILITY INSURANCE GROUP**
**WAYNE, PENNSYLVANIA**

---

This Endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**

---

## PROPERTY MANAGEMENT CLARIFICATION ENDORSEMENT

It is hereby agreed that the term "**Employee**" as used in this **Policy** refers only to those persons directly employed and compensated by the **Organization**.  Persons employed by other organizations whom are managed by any **Insured** under contract, agreement, or by common practice are not considered **Employees** of the **Organization.  Claims** made by such persons against the **Organization** are not covered under this **Policy**.

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

Exhibit C
Page 71

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**

## RETROACTIVE DATE ENDORSEMENT

It is hereby agreed that section II. FULL PRIOR ACTS COVERAGE PROVISION is deleted and replaced with the following:

Coverage shall apply to any **Claim** made against the **Insured** for **Wrongful Acts** arising solely out of the **Insured's** duties on behalf of the **Organization** committed prior to the expiration date of this Policy or the effective date of the cancellation or nonrenewal of this Policy, if applicable, provided that the **Claim** is first made during the **Policy Period**, or Extended Reporting Period, if applicable.

However, coverage shall not apply to any **Claim** made against any **Insured** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving a **Wrongful Act** committed or alleged to have been committed prior to 01/16/2018.

Coverage shall also not apply to any **Claim** based upon or arising out of any **Wrongful Act** or circumstance likely to give rise to a **Claim** of which the person or persons signing the **Application** had knowledge, or otherwise had a reasonable basis to anticipate might result in a **Claim**, prior to the earlier of:

A.  the inception date of this Policy; or

B.  the inception date of the first Policy of this type the **Company** has issued to the **Parent Organization**, provided that the **Company** has written continuous coverage for the **Parent Organization** from such date to the inception date of this Policy.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

Exhibit C
Page 72

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**

## PUNITIVE DAMAGES EXCLUSION

It is hereby agreed that Section III. DEFINITIONS is amended by deleting paragraph **K**. and replacing it with the following:

**K.** "**Loss**" means damages, settlements, front pay, back pay and pre-judgment and post-judgment interest awarded by a court.

**Loss** also includes liquidated damages awarded by a court pursuant to a violation of the Equal Pay Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, and the Fair Labor Standards Act (if endorsement EPL-162 is endorsed to this policy), all as amended, or any rules or regulations promulgated thereunder, or similar provisions of any federal, state or local law, statute or regulation to the extent such damages are insurable under applicable law, statute or regulation.

**Loss** does not include:

**(1)** fines, penalties, taxes, punitive and exemplary damages and the multiplied portion of any multiplied damage award;

**(2)** monetary sanctions that are uninsurable by operation of law;

**(3)** an express obligation to make payment in the event of the termination of employment.

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**

## Amended Notice/Claim And Circumstance Reporting Provisions

It is agreed:

I. INSURING AGREEMENT is deleted in its entirety and replaced by:

**A.**   The **Company** will pay on behalf of the **Insured**, **Loss** in excess of the Retention not exceeding the Limit of Liability shown on the policy Declarations for which this coverage applies that the **Insured** shall become legally obligated to pay because of Claims first made against the **Insured** during the **Policy Period** or during any Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**. Such **Claim** must be reported to the Company in accordance with Section IX herein.

**B.**   The **Company** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent.

II. FULL PRIOR ACTS COVERAGE PROVISION is deleted in its entirely and replaced by:

Coverage shall apply to any **Claim** made against an **Insured** for **Wrongful Acts** arising solely out of the **Insured's** duties on behalf of the **Organization** committed prior to the expiration date of this Policy or the effective date of cancellation or non-renewal of this Policy, if applicable, provided that the **Claim** is first made during the **Policy Period**, or Extended Reporting Period, if applicable. Such **Claim** must be reported to the Company in accordance with Section IX herein.

However, coverage shall not apply to any **Claim** based upon or arising out of any **Wrongful Act** or circumstance likely to give rise to a **Claim** of which the person or persons signing the **Application** had knowledge or otherwise had a reasonable basis to anticipate might result in a **Claim**, prior to the earlier of:

**A.**  the inception date of this Policy; or

**B**.  the inception date of the first Policy of this type the **Company** has issued to the **Parent Organization**, provided that the **Company** has written continuous coverage for the **Parent Organization** from such date to the inception date of this Policy.

VII. EXTENDED REPORTING PERIOD is deleted in its entirety and replaced by:

**A.** If the policy expires, is cancelled or non-renewed for any reason other than non-payment of premium, the **Parent Organization** shall have the right to purchase an Extended Reporting Period to report to the **Company** as soon as practicable during the Extended Reporting Period any **Claim (s)** being first made against an **Insured** during the twelve (12) months, or twenty-four (24) months or  thirty six (36) months after the effective date of such

EPL 169 (11-13)                                                              Page 1 of 3

Exhibit C
Page 74

expiration, non-renewal or cancellation (depending upon the Extended Reporting Period purchased,). For the purpose of this section, any change in premium terms or terms on renewal shall not constitute a refusal to renew.  An Extended Reporting Period shall only apply to a **Claim** arising from a **Wrongful Act** which was committed before the date of such expiration, cancellation or non-renewal.

**B.** The additional premium for the Extended Reporting Period shall be 50% of the annual premium set forth in the Policy Declarations for the twelve (12) month period; 100% of the annual premium set forth in the Policy Declarations for the twenty-four (24) month period; or 150% of the annual premium set forth in the Policy Declarations for the thirty-six (36) month period. The Extended Reporting Period begins on the expiration date or the effective date of cancellation or non-renewal of the policy. The **Parent Organization** must notify the **Company** in writing and must pay the additional premium due above no later than thirty (30) days after the effective date of such expiration, cancellation or non-renewal.

**C.** All premium paid with respect to an Extended Reporting Period shall be deemed fully earned as of the first day of the Extended Reporting Period.

**D.** The Limits of Liability available during the Extended Reporting Period shall not exceed the balance of the Limits of Liability available on the expiration date or effective date of cancellation or non-renewal of the policy.

**E.** Coverage for a **Claim** first received and reported during the Extended Reporting Period shall be excess over any other valid and collectible insurance providing coverage for such **Claim.**

IX. NOTICE/CLAIM AND CIRCUMSTANCE REPORTING PROVISIONS is deleted in its entirety and replaced by:

Notice hereunder shall be given in writing to the **Company**.  If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

**A.  Written Notice of a Claim:**

**(1)** As a condition precedent to exercising any right to coverage under this Policy, an **Insured** shall give to the **Company** written notice of a **Claim,** as soon as practicable but:

**(a)** if the Policy expires, is cancelled or is non-renewed and if no Extended Reporting Period is purchased, no later than sixty (60) days after the expiration date or effective date of such cancellation or non-renewal. Coverage for a **Claim** reported to the **Company** during the sixty (60) day period after expiration, cancellation or non-renewal applies only if the **Claim** is first made against an **Insured** prior to the Policy expiration or effective date of cancellation or non-renewal; or

**(b)** if an Extended Reporting Period is purchased, no later than the last day of the Extended Reporting Period;

Exhibit C
Page 75

provided that if the **Company** sends written notice to the **Parent Organization** stating that this Policy is being terminated for nonpayment of premium, an **Insured** shall give to the **Company** written notice of such **Claim** prior to the effective date of such termination.

**(2)** If an Extended Reporting Period is purchased, notice of **Claim** shall be in accordance with the terms and conditions of Section VII. EXTENDED REPORTING PERIOD.

**B.   Written Notice of a Circumstance:**

**(1)** An **Insured** shall give to the **Company** written notice of a circumstance which could reasonably be expected to give rise to a **Claim** being made against an **Insured** as soon as practicable during the **Policy Period** in which an **Insured** first becomes aware of the circumstance.

**(2)** If written notice of a circumstance which could reasonably be expected to give rise to a **Claim** being made against an **Insured** has been given to the **Company** during the **Policy Period**, any **Claim** which is subsequently made against an **Insured** and reported to the **Company** alleging, arising out of, based upon, or attributable to the facts set forth in the reported circumstance shall be considered to have been first made at the time such notice of the circumstance was given. Coverage for a circumstance reported pursuant to this provision applies only if the **Wrongful Act** that is the subject of the reported circumstance occurs prior to the expiration date or if applicable, prior to the effective date of cancellation or non-renewal of the **Policy Period** in which the circumstance was reported.

**(3)** When reporting a circumstance to the **Company**, an **Insured** shall give the reasons for anticipating why the circumstance could reasonably be expected to give rise to a **Claim** being made against an **Insured** with full particulars as to the dates and persons involved.

All other terms and conditions of this Policy remain unchanged. This endorsement is part of the **Parent Organization's** Policy and takes effect on the effective date of the **Parent Organization's** Policy unless another effective date is shown**.**

Exhibit C
Page 76

---

**Employment Practices Liability Insurance Policy**

---

Notice: This is a Claims Made Policy. This Policy covers only those **Claims** first made against the **Insured** during the **Policy Period** or Extended Reporting Period, if purchased. **Defense Costs** shall be applied against the Retention.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the **Company**, including the statements made in the **Application** and all attachments and materials submitted therewith, and subject to all the provisions of this Policy, the **Company** agrees as follows:

## I.   INSURING AGREEMENT

**A.**   The **Company** will pay on behalf of the **Insured, Loss** in excess of the Retention not exceeding the Limit of Liability shown on the policy Declarations for which this coverage applies that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during any Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization.**

**B.**   The **Company** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent.

## II.  FULL PRIOR ACTS COVERAGE PROVISION

Coverage shall apply to any **Claim** made against an **Insured** for **Wrongful Acts** arising solely out of the **Insured's** duties on behalf of the **Organization** committed prior to the expiration date of this Policy or the effective date of cancellation or non-renewal of this Policy, if applicable, provided that the **Claim** is first made during the **Policy Period**, or Extended Reporting Period, if applicable.

However, coverage shall not apply to any **Claim** based upon or arising out of any **Wrongful Act** or circumstance likely to give rise to a **Claim** of which the person or persons signing the **Application** had knowledge or otherwise had a reasonable basis to anticipate might result in a **Claim**, prior to the earlier of:

**A.**   the inception date of this Policy; or

**B.**   the inception date of the first Policy of this type the **Company** has issued to the **Parent Organization**, provided that the **Company** has written continuous coverage for the **Parent Organization** from such date to the inception date of this Policy.

## III.  DEFINITIONS

**A.**   **"Application"** means:

(1)   an application and any material submitted for this Policy and

(2)   an application(s),and any material submitted, for all previous Policies issued by the **Company** providing continuous coverage until the inception date of this Policy.

The content of (1) and (2) above is incorporated by reference in this Policy as if physically attached hereto.

**B.**   **"Claim"** means:

**(1)**   any written notice received by any **Insured** that any person or entity intends to hold such **Insured** responsible for a **Wrongful Act**; or

**(2)**   any proceeding initiated against any **Insured**, including any appeal therefrom, seeking to hold such **Insured** responsible for a **Wrongful Act**, including any proceeding conducted by the Equal Employment Opportunity Commission or similar federal, state or local agency and any appeal therefrom;

A **Claim** shall be considered first made when the **Insured** or its legal representative or agent first receives notice of a **Claim**.

**C.**   **"Company"** means the insurer identified on the Policy Declarations.

**D.**   **"Defense Costs"** means reasonable and necessary legal fees and expenses incurred by the **Company**, or by any attorney designated by the **Company** to defend any **Insured**, resulting from the investigation, adjustment, defense and appeal of a **Claim**. **Defense Costs** includes other fees, costs, costs of attachment or similar bonds (without any obligation on the part of the **Company** to apply for or furnish such bonds,) but does not include salaries, wages, overhead or benefits expenses of any **Insured**.

**E.** **"Discrimination"** means:
   **(1)** the termination of an employment relationship; or
   **(2)** a demotion or a failure to hire or promote any individual; or
   **(3)** any other limitation or classification of an **Employee** or applicant for employment which would deprive any individual of employment opportunities or adversely affect any individual's status as an **Employee**;

because of race, color, religion, age, sex, disability, pregnancy, national origin, marital status,  sexual orientation or other protected class or characteristic established under applicable federal, state, or local statute, ordinance, regulation or order.

**F.** "**Domestic Partner**" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

**G.** **"Employee"** means any natural person whose labor or service is engaged by and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business and includes leased, part-time, seasonal and temporary workers, independent contractors, volunteers and interns.

An **Employee's** status as an **Insured** will be determined as of the date of the **Wrongful Act** that results in a **Claim**.

**H.** "**Harassment**" means:
   **(1)** sexual harassment including unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature that are made a condition of employment, are used as a basis for employment decisions, or create a work environment that is hostile, intimidating or offensive or that interferes with performance; or
   **(2)** other harassment which creates a work environment that is hostile, intimidating or offensive or that otherwise interferes with performance.

**I.** **"Individual Insured(s)"** means any persons who were, now are, or shall be directors, officers, partners, managing members or **Employees** of the **Organization** including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

**J.** **"Insured(s)"** means the **Organization** and the **Individual Insureds**.

**K.** **"Loss"** means damages and settlements, front pay and back pay, and pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award or an express obligation to make payments in the event of the termination of employment.

For the purpose of determining the insurability of punitive damages and exemplary damages, the laws of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

**L.** **"Organization"** means:
   **(1)** the **Parent Organization** and
   **(2)** any **Subsidiary** of the **Parent Organization;** and
   **(3)** any entity in its capacity as a debtor in possession of **(1)** or **(2)** above under the United States bankruptcy law or equivalent status under the law of any other jurisdiction.

**M.** **"Parent Organization"** means the entity named in Item 1 of the Policy Declarations.

**N.** **"Policy Period"** means the period from the effective date of this Policy as set forth in the Policy Declarations, to the expiration date or effective date of cancellation or non-renewal, if any.

**O.** **"Retaliation"** means any actual or alleged retaliatory treatment against an **Employee** because of:
   **(1)** the exercise of or attempt to exercise an **Employee's** rights under law; or
   **(2)** an **Employee's** disclosure of or threat to disclose to a governmental agency or superior, acts of actual or alleged wrongdoing by an **Insured**; or
   **(3)** the filing of any claim under any federal, state, or local "whistle-blower" law including the Federal False Claims Act; or
   **(4)** **Employee** strikes or slowdowns.

**P.** "**Subsidiary**" means, for the purpose of this Policy, any entity which is more than 50% owned by the **Parent Organization** as of the effective date of this Policy and is disclosed

Exhibit C
Page 78

as a **Subsidiary** in an **Application** to the **Company.**

An entity formed or acquired after the effective date of this Policy is, for the purpose of this Policy, a **Subsidiary** if:
**(1)** the entity's **Employees** total less than 25% of the total work force of the **Parent Organization** and
**(2)** notice is given to the **Company** with full particulars about the new **Subsidiary** as soon as practicable but no later than the expiration date of this Policy or effective date of cancellation or non-renewal, if any

An entity which is formed or acquired after the effective date of this Policy and its **Employees** total 25% or more of the total work force of the **Parent Organization** is, for the purpose of this Policy, a **Subsidiary** if:
**(1)** notice is given to the **Company** of such **Subsidiary** as soon as practicable but within sixty (60) days of the formation or acquisition of the **Subsidiary** and
**(2)** the **Parent Organization** provides the **Company** with such information as the **Company** may deem necessary to determine insurability of the **Subsidiary** and
**(3)** the **Parent Organization** accepts any special terms, conditions, exclusions, limitations or premium imposed by the **Company** and
**(4)** the **Company**, at its sole discretion, agrees to insure the **Subsidiary.**

A **Subsidiary** which is sold or dissolved:
**(1)** after the effective date of this Policy and which was an **Insured** under this Policy; or
**(2)** prior to the effective date of this Policy and which was an **Insured** under a prior Policy issued by the **Company**;

shall continue to be an **Insured**, but only with respect to **Claims** first made during this **Policy Period** or Extended Reporting Period, if applicable, arising out of **Wrongful Acts** committed or allegedly committed during the time the entity was a **Subsidiary** of the **Parent Organization**.

**Q.** "**Workplace Tort**" means any actual or alleged employment-related:
**(1)** misrepresentation; or
**(2)** negligent supervision, training or evaluation; or
**(3)** wrongful discipline; or
**(4)** wrongful deprivation of a career opportunity; or

**(5)** failure to enforce written policies and procedures relating to a **Wrongful Act.**

**R.** "**Wrongful Act**" means any actual or alleged act of:
**(1)** **Discrimination;** or
**(2)** **Harassment;** or
**(3)** **Retaliation;** or
**(4)** **Wrongful Termination;** or
**(5)** **Workplace Tort;** or
**(6)** negligent violation of the Uniform Services Employment & Reemployment Rights Act; or
**(7)** negligent violation of the Family and Medical Leave Act of 1993; or
**(8)** negligent violation of state law having the same or substantially similar purpose as the Acts in **(6)** or **(7)** above; or
**(9)** acts described in clauses **(1)** through **(8)** above arising from the use of the **Organization's** Internet, e-mail, telecommunication or similar systems, including the failure to provide and enforce adequate policies and procedures relating to such use of the **Organization's** Internet, e-mail, telecommunication or similar systems;

committed or allegedly committed by the **Organization** or by an **Individual Insured** acting solely within his/her capacity as such, involving and brought by any **Employee**, former **Employee** or applicant for employment with the **Organization** or asserted by any **Employee**, former **Employee** or applicant for employment with the **Organization** against an **Individual Insured** because of his/her status as such.

It is further agreed that the same **Wrongful Act**, an interrelated series of **Wrongful Acts** or a series of similar or related **Wrongful Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Act** and to have commenced at the time of the earliest **Wrongful Act**.

**S.** "**Wrongful Termination**" means the actual or constructive termination of an employment relationship or the demotion of or the failure to promote any **Employee** in a manner which is illegal and wrongful or in breach of an implied agreement to continue employment**.**

## IV. EXCLUSIONS
**A.** The **Company** shall not be liable to  make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** for;

any actual or alleged bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property

Exhibit C
Page 79

including any resulting loss of use; provided that this exclusion shall not apply to **Claims** for mental anguish, emotional distress, invasion of privacy, humiliation, libel, slander or defamation that result from a **Wrongful Act.**

**B.** The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** (except where otherwise noted) in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

**(1)** conduct of the **Insured** or at the **Insured's** direction that is fraudulent, dishonest or criminal provided that this exclusion will not apply to:
    **(a)** **Defense Costs** incurred until such conduct is established to be fraudulent, dishonest or criminal by final and non-appealable judgment or adjudication;
    **(b)** the strictly vicarious liability of the **Insured** for the fraudulent, dishonest or criminal conduct of another **Insured**; or

**(2)** any pension, profit sharing, welfare benefit or other employee benefit program established in whole or in part for the benefit of any **Individual Insured**, or based upon, arising out of or in any way involving the Employee Retirement Income Security Act of 1974 (except Section 510 thereof) or any amendments thereof or regulations promulgated thereunder or similar provisions of any federal, state or local statutory law or common law; provided that this exclusion will not apply to any **Claim** for actual or alleged **Retaliation** with regard to benefits paid or payable**; or**

**(3)** any obligation under a worker's compensation, disability benefits, insurance benefits or unemployment compensation law or any similar law or regulation; provided that this exclusion will not apply to any **Claim** for actual or alleged **Retaliation** with regard to benefits paid or payable; or

**(4)** any prior or pending litigation, administrative or regulatory proceeding, **Claim**, demand, arbitration, decree or judgment of which the **Insured** had written notice before the effective date of this Policy; or any fact, circumstance, event, situation, or **Wrongful Act** which before the effective date of this Policy

was the subject of any notice under any other similar policy of insurance to the **Insured**; or any future **Claims** or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts, actual or alleged;

provided that, if this Policy is a renewal of a Policy or Policies previously issued by the **Company** and if the coverage provided by the **Company** was continuous from the effective date of the first such other Policy to the effective date of this Policy, the reference in this exclusion to the "effective" date will mean the effective date of the first Policy under which the **Company** first provided continuous coverage to the **Insured**; or

**(5)** any lockout, strike, picket line, replacement of worker(s) or other similar actions resulting from labor disputes or labor negotiations; provided that this exclusion will not apply to a **Claim** for actual or alleged **Retaliation** arising from the foregoing; or

**(6)** the National Labor Relations Act, Labor Management Relations Act and amendments thereto, or any similar state, federal or local law or regulation; provided that this exclusion will not apply to a **Claim** for actual or alleged **Retaliation** arising from an **Insured's** alleged violation of such laws; or

**(7)** any **Claim** against any **Subsidiary** or its **Individual Insureds** for any **Wrongful Act** occurring prior to the date that such entity became a **Subsidiary** or any **Wrongful Act** occurring at any time that such entity is not a **Subsidiary**; or

**(8)** any damages which the **Insured** is legally obligated to pay by reason of the assumption of another's liability for a **Wrongful Act** in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

**(9)** actual or alleged violations of the Fair Labor Standards Act, any amendments thereto, or any similar provisions of any federal, state or local law(except the Equal Pay Act); or improper wages or wage disputes due to misclassification of **Employees** as exempt or non exempt; or misrepresentation involving any

**Employee's** status as exempt or non-exempt**.**

C. The **Company** shall not be liable to make payment for **Loss** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

(1) the **Insured's** actual or alleged liability for damages under any express employment contract or express employment agreement; provided that this exclusion shall not apply to liability for a **Wrongful Act** which the **Insured** would have in the absence of such contract or agreement; or

(2) any costs or actual or alleged liability resulting from the modification of any real or personal property in order to make said real or personal property more accessible or accommodating to any disabled person.

**Defense Costs** shall be a part of and not in addition to the Limit of Liability stated in Item III of the Policy Declarations for C.(1) and C.(2) above.

## V.  LIMITS OF LIABILITY AND RETENTION

Regardless of the number of **Insureds** under this Policy, **Claims** made or brought on account of **Wrongful Acts** or otherwise, the **Company's** liability is limited as follows:

A. The Limit of Liability specified in the Policy Declarations as "in the aggregate" shall be the maximum liability for **Loss** from all **Claims** to which this Policy applies.

B. The Limit of Liability specified in the Policy Declarations as the Limit for each **Claim** shall be the maximum liability for **Loss** for each **Claim** to which this Policy applies.

C. **Defense Costs** shall be in addition to the Limit of Liability shown in the Policy Declarations.

D. Subject to the Limits of Liability provisions stated in A., B., and C. above, the **Company** shall be liable to pay only **Defense Costs** and **Loss** in excess of the Retention specified in the Policy Declarations hereof as respects each and every **Claim** to which this Policy applies.

E. The **Company** shall have no obligation to pay any part or all of the Retention specified in the Policy Declarations for any **Claim** on behalf of an **Insured**. If the **Company**, at its sole discretion, elects to pay any part or all of the Retention, the **Insureds** agree to repay such amounts to the **Company** upon demand.

F. The Limit of Liability for the Extended Reporting Period, if applicable, shall be a part of and not in addition to the Limit specified in the Policy Declarations.

G. **Claims** based upon or arising out of the same **Wrongful Act**, interrelated **Wrongful Acts**, or a series of similar or related **Wrongful Acts** shall be considered a single **Claim** and shall be considered first made during the **Policy Period** or Extended Reporting Period, if applicable, in which the earliest **Claim** arising out of such **Wrongful Act(s)** was first made and all **Loss** for such **Claims** shall be subject to the one Limit of Liability that applies to such earliest **Claim**.

H. The Limit of Liability for this Policy shall apply separately to each consecutive annual period starting with the beginning of the **Policy Period** shown in the Policy Declarations. If this Policy is issued for a period of more than twelve (12) months but less than twenty four (24) months or if the **Policy Period** is extended after issuance, the additional Extended Reporting Period will be deemed part of the last **Policy Period** for the purposes of determining the Limit of Liability.

## VI. SPOUSAL AND DOMESTIC PARTNER EXTENSION

If a **Claim** against an **Individual Insured** includes a **Claim** against the lawful spouse or **Domestic Partner** of such **Individual Insured** solely by reason of (a) such spousal or **Domestic Partner** status or (b) such spouse's or **Domestic Partner's** ownership interest in property or assets that are sought as recovery for **Wrongful Acts**, any **Loss** which such spouse or **Domestic Partner** becomes legally obligated to pay on account of such **Claim** shall be deemed **Loss** which the **Individual Insured** becomes legally obligated to pay as a result of the **Claim**.

All definitions, exclusions, terms and conditions of this Policy, including the Retention, applicable to any **Claim** against, or **Loss** or **Defense Costs** sustained by, such **Individual Insured** shall also apply to this coverage extension.

The extension of coverage afforded by this Section VI shall not apply to the extent the **Claim** alleges any **Wrongful Act**, error, omission, misstatement, misleading statement, neglect or breach of duty committed by such spouse or

**Domestic Partner** as long as they are not also an **Individual Insured**.

## VII. EXTENDED REPORTING PERIOD

**A.** If the Policy expires, is cancelled or is non renewed for any reason other than non payment of premium, the **Parent Organization** shall have the right to purchase an Extended Reporting Period to report any **Claim**(s) or circumstance(s) which could be expected to give rise to a **Claim** being first made against an **Insured** during the twelve (12) months, twenty-four (24) months or thirty-six (36) months after the expiration date or effective date of such cancellation or non-renewal (depending upon the Extended Reporting Period purchased). An Extended Reporting Period shall only apply to a **Wrongful Act** committed before the date of Policy expiration, cancellation or non-renewal. For the purpose of this clause, any change in premium terms or terms on renewal shall not constitute a refusal to renew.

**B.** The additional premium for the Extended Reporting Period shall be 50% of the annual premium set forth in the Policy Declarations for the twelve (12) month period; 100% of the annual premium set forth in the Policy Declarations for the twenty-four (24) month period; and 150% of the annual premium set forth in the Policy Declarations for the thirty-six (36) month period. The Extended Reporting Period begins on the expiration date or effective date of the cancellation or non-renewal of the Policy. The **Parent Organization** must notify the **Company** in writing and must pay the additional premium set forth above no later than thirty (30) days after the expiration date or effective date of such cancellation or non-renewal.

**C.** All premium paid with respect to an Extended Reporting Period shall be deemed fully earned as of the first day of the Extended Reporting Period.

**D.** The Limits of Liability available during the Extended Reporting Period shall not exceed the balance of the Limits of Liability available on the expiration date or effective date of the cancellation or non-renewal of the Policy.

**E.** Coverage for **Claim(s)** or circumstances which ultimately lead to a **Claim(s)** first received and reported during the Extended Reporting Period shall be excess over any other valid and collectible insurance providing coverage for such **Claim(s)**.

## VIII. DEFENSE AND SETTLEMENT

**A.** The **Insured** shall not demand or agree to arbitration of any **Claim** without the written consent of the **Company**. The **Insured** shall not, except at personal cost, make any offer or payment, admit any liability, settle any **Claim**, assume any obligation or incur any expense without the **Company's** written consent.

**B.** Except as otherwise provided in this Policy, if a **Claim** is made against an **Insured** for **Loss** that is both covered and uncovered by this Policy, the **Company** will pay one hundred percent (100%) of the **Defense Costs** for the **Claim** until such time that the Limits of Liability of this policy are exhausted by payment of a covered **Loss** or the **Claim** for the covered **Loss** is resolved by settlement, verdict or summary judgment.

**C.** The **Company**, as it deems expedient, has the right to investigate, adjust, defend, appeal and, with the consent of the **Insured**, negotiate the settlement of any **Claim** whether within or above the Retention.  If the **Insured** refuses to consent to a settlement recommended by the **Company**, the **Company** is not obligated to pay any **Loss** or defend any **Claim** after the Limit of Liability has been exhausted by payment of **Loss** by settlement or otherwise. The **Company's** obligation to the **Insured** for **Defense Costs** and **Loss** attributable to such **Claim(s)** shall be limited to:
**(1)** the amount of the covered **Loss** in excess of the Retention which the **Company** would have paid in settlement at the time the **Insured** first refused to settle;
**(2)** plus covered **Defense Costs** incurred up to the date the **Insured** first refused to settle;
**(3)** plus seventy five percent (75%) of covered **Loss** and **Defense Costs** in excess of the first settlement amount recommended by the **Company** to which the **Insured** did not consent.

It is understood that payment of **(1)**, **(2)** and **(3)** above is the limit of the **Company's** liability under this Policy for any **Claim** in which the **Insured** fails or refuses to consent to the **Company's** settlement recommendation, subject at all times to the Limits of Liability and Retention provisions of this Policy. The remaining twenty five percent (25%) of **Loss** and **Defense Costs** in excess of the amount referenced in (1) and (2) above shall be the obligation of the **Insured.**

**D.** The **Insured** agrees to cooperate with the **Company** on all **Claims**, and provide such

assistance and information as the **Company** may reasonably request. Upon the **Company's** request, the **Insured** shall submit to examination and interrogation by a representative of the **Company**, under oath if required, and shall attend hearings, depositions and trials and shall assist in the conduct of suits, including but not limited to effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, giving written statements to the **Company's** representatives and meeting with such representatives for the purpose of investigation and/or defense, all of the above without charge to the **Company**. The **Insured** further agrees not to take any action which may increase the **Insured's** or the **Company's** exposure for **Loss** or **Defense Costs**.

The **Insured** shall execute all papers required and shall do everything that may be necessary to secure and preserve any rights of indemnity, contribution or apportionment which the **Insured** or the **Company** may have, including the execution of such documents as are necessary to enable the **Company** to bring suit in the **Insured's** name and shall provide all other assistance and cooperation which the **Company** may reasonably require.

IX. NOTICE/CLAIM AND CIRCUMSTANCE REPORTING PROVISIONS

Notice of a **Claim** or circumstance which could be expected to give rise to a **Claim** being made against any **Insured** shall be given in writing to the **Company**. If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

**A.** As a condition precedent to exercising any right to coverage under this Policy, the **Insured** shall give to the **Company** written notice of a **Claim** or circumstance which could be expected to give rise to a **Claim** being made against an **Insured** as soon as practicable, but:

**(1)** if the Policy expires, is cancelled or is non-renewed and if no Extended Reporting Period is purchased, no later than sixty (60) days after the expiration date or effective date of such cancellation or non-renewal; or

**(2)** if an Extended Reporting Period is purchased, no later than the last day of the Extended Reporting Period.

**B.** If written notice of a **Claim** or circumstance which could be expected to give rise to a **Claim** being made against an **Insured** has

been given to the **Company** pursuant to Clause IX. **A.** above, then any **Claim** which is subsequently made against the **Insured** and reported to the **Company** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** or circumstance which could be expected to give rise to a **Claim** being made against an **Insured** for which notice was given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** or circumstance which could be expected to give rise to a **Claim** being made against an **Insured** for which notice was given, shall be considered made at the time such notice was given.

X. CANCELLATION OR NON-RENEWAL

**A.** This Policy may be canceled by the **Parent Organization** by either surrender of the Policy thereof to the **Company** at its address stated on the Policy Declarations or by mailing to the **Company** written notice requesting cancellation and in either case stating when thereafter such cancellation shall be effective. If canceled by the **Parent Organization**, the **Company** shall retain the customary short rate proportion of the premium.

**B.** The **Company** may cancel this Policy only in the event of the failure of the **Insured** to pay the premium when due by mailing to the **Parent Organization** written notice when, not less than ten (10) days thereafter, such cancellation shall be effective.

**C.** In the event the **Company** refuses to renew this Policy, the **Company** shall mail to the **Parent Organization**, not less than sixty (60) days prior to the end of the **Policy Period**, written notice of non-renewal. Such notice shall be binding on all **Insureds**.

**D.** The **Company** shall mail notice of Cancellation or Non-renewal by certificate of mailing stating the effective date of Cancellation or Non-renewal and the specific reason(s) for Cancellation or Non-renewal, which shall become the end of the **Policy Period**. Mailing of such notice shall be sufficient notice of Cancellation or Non-renewal.

**E.** If the Policy is canceled by the **Company**, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected, or as soon as practicable thereafter.

## XI. REPRESENTATIONS AND SEVERABILITY

**A.** The **Insured** represents that the particulars and statements contained in the **Application** are true and agree that (1) those particulars and statements are the basis of this Policy and are to be considered as incorporated into and constituting a part of the Policy; (2) those particulars and statements are material to the acceptance of the risk assumed by the **Company**; and (3) the Policy is issued in reliance upon the truth of such representations.

**B.** An **Application** for coverage shall be construed as a separate **Application** for coverage by each **Individual Insured**. With respect to the particulars and statements contained in the **Application**, no fact pertaining to or knowledge possessed by any **Individual Insured** shall be imputed to any other **Individual Insured** for the purpose of determining if coverage is available. However, facts pertaining to and knowledge possessed by the individual(s) signing the **Application** and the President, Chairperson, Chief Executive Officer, Partner and Chief Financial Officer shall be imputed to the **Organization** for the purpose of determining if coverage is available.

## XII. SUBROGATION

In the event of any payment under this Policy, the **Company** shall be subrogated to the **Insured's** right of recovery therefore against any person or entity and the **Insured** shall execute and deliver such instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall not do anything to prejudice such rights.

## XIII CHANGES

Notice to any agent or knowledge by any agent shall not effect a waiver or change in any part of this Policy or stop the **Company** from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed except by an endorsement, issued by the **Company** to form a part of this Policy.

## XIV. AUTHORIZATION CLAUSE AND NOTICES

By acceptance of this Policy, the **Insured** agrees that the **Parent Organization** shall act on behalf of all **Insureds** with respect to the giving and receiving of any return premiums that may become due under this Policy. Notice to the **Parent Organization** shall be directed to the individual named in the **Application**, or such other person as shall be designated by the **Parent Organization** in writing, at the address of the **Parent Organization**. Such notice shall be deemed to be notice to all **Insureds**. The **Parent Organization** shall be the agent of all **Insureds** to effect changes in the Policy or purchase the Extended Reporting Period.

## XV. ASSIGNMENT

Assignment of interest under this Policy shall not bind the **Company** unless its consent is endorsed hereon.

## XVI. OTHER INSURANCE

This Policy shall be excess of other existing insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically written to be in excess of this Policy.

## XVII. TERMS OF POLICY CONFORMED TO STATUTE

Terms of this Policy which are in conflict with the statutes of the State wherein this Policy is issued are hereby amended to conform to such statutes.

## XVIII. CHANGES IN EXPOSURE

**A.** If after the inception date of this Policy:

**(1)** the **Parent Organization** merges into or consolidates with another entity such that the **Parent Organization** is not the surviving entity; or

**(2)** another entity, person or group of entities and/or persons acting in concert acquires more than fifty percent (50%) of the assets of the **Parent Organization**; or

**(3)** another entity, person or group of entities and/or persons acting in concert acquires the right to elect or select a majority of the directors of the **Parent Organization**; or

**(4)** the **Parent Organization** sells all or substantially all of its assets ,

the above events referred to as a "Transaction";

this Policy shall continue in full force and effect until the expiration date shown in the Policy Declarations or the effective date of non-renewal if applicable, with respect to **Wrongful Acts** occurring before the Transaction, but there shall be no coverage under this Policy for actual or alleged **Wrongful Acts** occurring on and after the Transaction. The entire premium for this Policy shall be deemed fully earned on the transaction date. In the event of a Transaction, the **Parent Organization** shall have the right to an offer of coverage by the **Company** for an Extended Reporting Period to report **Wrongful**

**Acts** occurring prior to the effective date of the Transaction.

**B.** The **Parent Organization** shall give the **Company** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

## XIX. ACTION AGAINST THE COMPANY

**A.** No action shall lie against the **Company** unless as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, and until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant or the claimant's legal representative, and the **Company**.

**B.** Any person or the legal representatives thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or entity shall have any right under this Policy to join the **Company** as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the **Company** be impleaded by the **Insured** or their legal representatives.

Bankruptcy or insolvency of the **Insured** or their successors in interest shall not relieve the **Company** of its obligations hereunder.

## XX. ACCEPTANCE

This Policy embodies all agreements existing between the parties hereunder or any of their agents relating to this insurance.

Exhibit C
Page 85

# INSURANCE

# POLICY

## UNITED STATES LIABILITY
## INSURANCE GROUP

A STOCK COMPANY

A BERKSHIRE HATHAWAY COMPANY

1190 Devon Park Drive
Wayne, PA 19087-2191
888-523-5545 – USLI.COM

This policy jacket together with the policy declarations,
coverage forms and endorsements, if any, complete
this policy.

The enclosed declarations designates the issuing
company.

Jacket (07-19)

Exhibit C
Page 86

# INSURANCE POLICY

# Read your policy carefully!

**In Witness Whereof**, the company has caused this Policy to be executed and attested.  Where required by law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

Exhibit C
Page 87

# POLICY CANCELLATION ENDORSEMENT

**Mount Vernon Fire Insurance Company**

1190 Devon Park Drive
Wayne, PA 19087-2191
Phone:  (610) 688-2535
Fax:  (610) 688-4391

Date:     04/15/2020
Endorsement #:     1

Agent:     AMWINS BROKERAGE OF CALIFORNIA (REDONDO BEACH)

Insured:     KELEMEN COMPANY, LLC

Policy #:     EPL2556976B

| | | | |
|---|---|---|---|
| Inception Date of Policy: | 01/16/2020 | Total Advance Premium: | $2,980 |
| Cancellation Date of Policy: | 04/03/2020 | Return Premium: | $2,351 |

This policy has been cancelled, effective on the date shown above at 12:01 am. The return premium amount resulting from the cancellation of this policy is noted above.

A pro-rate factor was applied in the calculation of the Return Premium.

**TOTAL CHARGES:**

| | |
|---|---|
| Return Premium: | ($2,351.00) |
| Surplus Lines Tax | -$70.53 |
| Stamping Fee | -$5.88 |
| **Total:** | **($2,427.41)** |

Additional Comments:
Finance Company Cancellation

RPCALC (03-01)

Exhibit C
Page 88

# REINSTATEMENT ENDORSEMENT

**Mount Vernon Fire Insurance Company**

1190 Devon Park Drive
Wayne, PA 19087-2191
Phone:  (610) 688-2535
Fax:  (610) 688-4391

Endorsement #:     2

Date of Notice:   6/23/2020

Additional Premium:   $2,351

You are hereby given notice of the reinstatement of Policy Number **EPL2556976B** heretofore cancelled in accordance with the terms and conditions thereof.  By virtue of this notice as issued to you, the policy is reinstated from 12:01 A.M. Standard Time on the date stated below.

Effective Date of Reinstatement:   04/03/2020

**TOTAL CHARGES:**

| | |
|---|---|
| Additional Premium: | $2,351.00 |
| Surplus Lines Tax | $70.53 |
| Stamping Fee | $5.88 |
| **Total:** | **$2,427.41** |

Insured/Additional Insured

This Notice is for

KELEMEN COMPANY, LLC
19100 VON KARMAN AVE, STE 480
IRVINE, CA 92612

Agent

Copy Notice is to

AMWINS BROKERAGE OF CALIFORNIA (REDONDO BEACH)
435 N. Pacific Coast Highway, Suite 200
Redondo Beach, CA  90277

Broker

REINST (03-01)

Exhibit C
Page 89

# REINSTATEMENT ENDORSEMENT

**Mount Vernon Fire Insurance Company**

[!Street Address]
[!CityStateZip]
Phone: (610) 688-2535
Fax: (610) 688-4391

Copy
Notice is
to

REINST (03-01)

Exhibit C
Page 90