# EXHIBIT I

Exhibit I
Page 159

1 | ADAM REISNER, ESQ., (State Bar No. 204351)
TESSA KING, ESQ., (State Bar No. 251408)
2 | ALISA KHOUSADIAN, ESQ., (State Bar No. 285497)
**REISNER & KING LLP**
3 | 14724 Ventura Blvd., Suite 1210
Sherman Oaks, California 91403
4 | Phone: (818) 981-0901
5 | Fax:    (818) 981-0902

6 | Attorneys for PLAINTIFF **JUNE NAGANO**

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

SEP - 9 2015

ALAN CARLSON, Clerk of the Court
D. Honomich
BY D. HONOMICHL

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY ORANGE**

| | |
|---|---|
| JUNE NAGANO, | Case No.: 30-2015-00797817-CU-WT-CJC |
| Plaintiff, | *[Assigned for all purposes to the Hon. Judge Geoffrey T. Glass, Dept. C32]* |
| vs. | **FIRST AMENDED COMPLAINT FOR DAMAGES:** |
| WIND WATER REALTY, INC., a California corporation; | **(1) ASSAULT;** |
| WIND WATER REALTY ADVISERS, INC., a California corporation; | **(2) SEXUAL BATTERY;** |
| WIND WATER DEVELOPMENT ADVISORS, INC., a California corporation; | **(3) BATTERY;** |
| TIBOR KELEMEN, an individual; | **(4) FALSE IMPRISONMENT;** |
| TAM DOAN, an individual; and DOES 1-100, inclusive, | **(5) SEX/GENDER HARASSMENT, VIOLATION OF CAL. GOV. CODE §§ 12940 ET SEQ.;** |
| Defendants. | **(6) SEX/GENDER DISCRIMINATION, VIOLATION OF CAL. GOV. CODE §§ 12940 ET SEQ.;** |
| | **(7) SEX/GENDER RETALIATION, VIOLATION OF CAL. GOV. CODE §§ 12940 ET SEQ.;** |
| | **(8) RACE/NATIONAL ORIGIN HARASSMENT, VIOLATION OF CAL. GOV. CODE §§ 12940 ET SEQ.;** |

1

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 160

|   |   |
|---|---|
| 1 | ) **(9) INTENTIONAL INFLICTION OF** |
|   | ) **EMOTIONAL DISTRESS;** |
| 2 | ) |
|   | ) **(10)RETALIATION & WRONGFUL** |
| 3 | ) **CONSTRUCTIVE TERMINATION IN** |
|   | ) **VIOLATION OF PUBLIC POLICY.** |
| 4 | ) |
| 5 | ) **JURY TRIAL DEMANDED** |

6    COMES NOW PLAINTIFF JUNE NAGANO (hereinafter referred to as "NAGANO" or

7  "PLAINTIFF") and complains against the above-named Defendants and for causes of action

8  against the Defendants, and each of them, as follows:

9                                          **I.**

10                            **FIRST CAUSE OF ACTION**

11                                  **For Assault**

12        **Against Defendants KELEMEN, WIND WATER, & DOES 1 Through 100, Only**

13  1.      This Court has jurisdiction over the claims alleged herein. The relief requested is within

14  the jurisdiction of this Court.

15  2.      Venue is proper in the County of Orange as Defendants conduct business in Orange

16  County.

17  3.      At all times mentioned herein, Plaintiff was, and now is, an individual residing in the

18  County of Orange, State of California.

19  4.      Plaintiff is informed and believes, and thereon alleges, that at all times relevant herein,

20  Defendants WIND WATER REALTY, INC., a California corporation, WIND WATER

21  REALTY ADVISERS, INC., a California corporation, and WIND WATER DEVELOPMENT

22  ADVISORS, INC. , a California corporation (hereinafter collectively referred to as "WIND

23  WATER" and collectively with all other Defendants as "Defendants") were, and now are, valid

24  businesses of forms unknown duly organized and existing under the laws of the State of

25  California, having their principal places of business in the County of Orange, State of California.

26  5.      At all times mentioned herein, Defendant Founder and Chief Executive Officer TIBOR

27  KELEMEN (hereinafter referred to as "KELEMEN" and collectively with all other Defendants

28

                                          2

as "Defendants"), was, and now is, an individual residing in the County of Orange, State of California, and was a Manager, Officer, Shareholder, Director, Supervisor, Manager, Managing Agent, Owner, Principal and Employee of all Defendants and DOES 1 through 100, and each of them.

6.      At all times mentioned herein, Defendant Director of Operations Tam Doan (hereinafter referred to as "DOAN" and collectively with all other Defendants as "Defendants"), was, and now is, an individual residing in the County of Orange, State of California, and was a Manager, Officer, Shareholder, Director, Supervisor, Manager, Managing Agent, Owner, Principal and Employee of all Defendants and DOES 1 through 100, and each of them.

7.      Plaintiff is informed and believes and thereon alleges that each of the Defendants named herein has, at all times relevant to this action, been the officer, agent, employee and/or representative of the remaining Defendants and has acted within the course and scope of such agency and employment, and with the permission and consent of the co-defendants.

8.      Plaintiff was hired by Defendant Wind Water as its Director of Marketing in or around August 2013 and was wrongfully constructively terminated from her employment on or about October 26, 2014.

9.      Defendant CEO Kelemen assaulted Plaintiff as he acted with the intent to cause Plaintiff an imminent apprehension of a harmful or offensive contact and did actually cause her a reasonable belief that she was about to be touched in a harmful or offensive manner.

10.     On or about December 7, 2013, Defendant CEO Kelemen assaulted Plaintiff at the 2013 company holiday party, which was held at a dance club, as he approached Plaintiff while she was dancing and inappropriately touched and groped her body without her consent. Plaintiff protested his behavior and quickly walked away from him.

11.     Thereafter, on or about September 5, 2014, Defendant CEO Kelemen assaulted Plaintiff as he grabbed her by the elbow and pulled her outside the restaurant to a secluded alcove by the water, causing Plaintiff to reasonably believe she was about to be touched in a harmful and/or offensive manner.

Exhibit I
Page 162

12.     When Plaintiff attempted to flee the alcove, Defendant CEO Kelemen blocked her with his legs, thereby assaulting Plaintiff and again causing Plaintiff to reasonably believe she was about to be touched in a harmful and/or offensive manner.

13.     Defendant CEO Kelemen then assaulted Plaintiff as he forcefully approached her and grabbed her and placed his hand over her mouth. Defendant CEO Kelemen also aggressively grabbed Plaintiff by the face and kissed her against her consent.

14.     Defendant CEO Kelemen further assaulted Plaintiff as he touched Plaintiff's vagina and rectum with his hand(s) and/or fingers without her consent.

15.     Defendant CEO Kelemen then forced Plaintiff to engage in oral copulation as he pushed Plaintiff to her knees, forced his penis into her mouth, and demanded he "finish [him] off," despite Plaintiff's pleas that he stop.

16.     On said occasions, prior to Defendant CEO Kelemen making physical contact with her, Plaintiff observed Defendant CEO Kelemen about to touch her as well as his aggressive and offensive behavior, thereby causing Plaintiff a reasonable belief that she was about to be touched in a harmful or offensive manner.

17.     In doing the acts herein alleged, Defendant CEO Kelemen acted with the intent to cause Plaintiff an imminent apprehension of a harmful or offensive contact and did actually cause her a reasonable belief that she was about to be touched in a harmful or offensive manner.

18.     Plaintiff did not consent to Defendant CEO Kelemen putting her in apprehension of such contact.

19.     Indeed, throughout the encounter, Plaintiff repeatedly protested Defendant CEO Kelemen's behavior, yelling "no" multiple times and fighting him off with her hands. Plaintiff was hysterical and crying throughout the encounter, further demonstrating she did not consent to the assaults committed by Defendant CEO Kelemen on or about September 5, 2014.

20.     At all times herein relevant, Defendant CEO Kelemen was acting within the course and scope of his employment with Defendant Wind Water. As such, Defendant Wind Water is liable for the aforesaid acts of Defendant CEO Kelemen.

21.     Plaintiff specifically complained about the assaults committed by Defendant CEO Kelemen. Indeed, on or about October 26, 2014, Plaintiff submitted a written complaint Defendant Wind Water and Defendant CEO Kelemen, stating, "September 5th, at Newport Beach Yacht Club, you made unwanted advances towards me and touched me in an unprofessional manner (including kissing me and groping me). You are well aware that sexual assault and touching your employees is against the law."

22.     Despite Plaintiff's complaint(s), Defendant Wind Water failed to take corrective and/or remedial measures. Instead, upon receipt of Plaintiff's complaint letter, Defendant Director Doan sent Plaintiff a text message in which she referred to Plaintiff as a "fucken whore" and accused her of lying. As such, Defendant Wind Water ratified and condoned Defendant CEO Kelemen's violent workplace conduct.

23.     As a direct and legal result of the acts and omissions of Defendants and DOES 1 through 100, Plaintiff was rendered and/or may be rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and/or suffered and/or may suffer, among other things, numerous internal injuries, severe fright, shock, pain, discomfort, and/or anxiety, as well as risk and fear of sexually transmitted diseases.

24.     As a further legal result of the acts and omissions of Defendants and DOES 1 through 100, Plaintiff has been forced and/or will be forced to incur expenses for medical and/or psychiatric care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, she may be and/or will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

25.     Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents has been and/or will be unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will and/or may be fully and/or partially incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

**FIRST AMENDED COMPLAINT FOR DAMAGES**
Exhibit I
Page 164

26.     As a further direct and legal result of the acts and conduct of Defendants Wind Water and CEO Kelemen and DOES 1 through 100, Plaintiff has been caused and/or may be caused, and did suffer and/or may suffer, and continues to suffer severe and permanent emotional and/or mental distress and/or anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and/or anxiety, as well as risk and fear of potential sexually transmitted diseases. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

27.     The aforementioned acts of Defendants Wind Water and CEO Kelemen and DOES 1 through 100, and each of them, were willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendant Wind Water and DOES 1 through 100, and with the express knowledge, consent, and/or ratification of managerial agents and employees of Defendant Wind Water and DOES 1 through 100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial pursuant to California Civil Code § 3294(a) and (b).

28.     By the aforesaid acts and conduct of Defendants Wind Water and CEO Kelemen and DOES 1 through 100, Plaintiff has been directly and legally caused to suffer actual damages pursuant to Cal. Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorney's fees, and/or other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

29.     Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

## II.

## SECOND CAUSE OF ACTION

### For Sexual Battery

**Against Defendants KELEMEN, WIND WATER, & DOES 1 Through 100, Only**

30.     Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this Complaint as though duly set forth in full herein.

6

31. Defendant CEO Kelemen sexually battered Plaintiff as he intentionally caused unconsented harmful or offensive contact with Plaintiff, including penetrating Plaintiff's vagina and rectum with his fingers as well as forcing his penis into her mouth.

32. As alleged, on or about September 5, 2014, Defendant CEO Kelemen battered Plaintiff as he grabbed her by the elbow and pulled her outside the restaurant to a secluded alcove by the water. When Plaintiff attempted to flee the alcove, Defendant CEO Kelemen blocked her with his legs, thereby battering Plaintiff by touching her in a harmful and/or offensive manner.

33. Defendant CEO Kelemen then sexually battered Plaintiff as he forcefully grabbed her, placed his hand over her mouth, and then started kissing her lips and/or face without her consent. Defendant CEO Kelemen also grabbed Plaintiff by the arms and/or wrists in an attempt to stop her from trying to fight him off.

34. Defendant CEO Kelemen further sexually battered Plaintiff as he repeatedly touched Plaintiff's vagina and rectum with his hand(s) and/or fingers without her consent.

35. Defendant CEO Kelemen then forced Plaintiff to engage in oral copulation as he pushed Plaintiff to her knees, forced his penis into her mouth, and demanded he "finish [him] off," despite Plaintiff's pleas that he stop.

36. In doing all of the acts herein alleged, Defendant CEO Kelemen intended to cause harmful or offensive contact with Plaintiff and did directly cause such harmful or offensive contact, thereby battering Plaintiff.

37. Specifically, Defendant CEO Kelemen acted with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff, including her vagina and rectum, as well as with the intent to cause a harmful or offensive contact with Plaintiff by way of his intimate part, i.e. his penis. As a result of the aforementioned, a sexually offensive contact with Plaintiff resulted.

38. Defendant CEO Kelemen, in doing the aforementioned, also acted with the intent to cause an imminent apprehension of the conduct described, and a sexually offensive contact with Plaintiff resulted.

39.     Plaintiff did not consent and/or lacked the ability to consent to Defendant CEO Kelemen touching her in such harmful and/or offensive ways.

40.     Indeed, throughout the encounter, Plaintiff repeatedly protested Defendant CEO Kelemen's behavior, yelling "no" multiple times and fighting him off with her hands. Plaintiff was also hysterical and crying throughout the encounter, further demonstrating she did not consent to the sexual battery(s) committed by Defendant CEO Kelemen.

41.     At all times herein relevant, Defendant CEO Kelemen was acting within the course and scope of his employment with Defendant Wind Water. As such, Defendant Wind Water is liable for the aforesaid acts of Defendant CEO Kelemen.

42.     Plaintiff specifically complained about the sexual battery committed by Defendant CEO Kelemen. Indeed, on or about October 26, 2014, Plaintiff submitted a written complaint Defendant Wind Water and Defendant CEO Kelemen, stating, "September 5th, at Newport Beach Yacht Club, you made unwanted advances towards me and touched me in an unprofessional manner (including kissing me and groping me). You are well aware that sexual assault and touching your employees is against the law."

43.     Despite Plaintiff's complaint(s), Defendant Wind Water failed to take corrective and/or remedial measures. Instead, upon receipt of Plaintiff's complaint letter, Defendant Director Doan sent Plaintiff a text message in which she referred to Plaintiff as a "fucken whore" and accused her of lying. As such, Defendant Wind Water ratified and condoned Defendant CEO Kelemen's violent workplace conduct.

44.     As a direct and legal result of the acts and omissions of Defendants Wind Water and CEO Kelemen and DOES 1 through 100, Plaintiff was rendered and/or may be rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and/or suffered and/or may suffer, among other things, numerous internal injuries, severe fright, shock, pain, discomfort, and/or anxiety, as well as risk and fear of sexually transmitted diseases.

45.     As a further legal result of the acts and omissions of Defendants Wind Water and CEO Kelemen and DOES 1 through 100, Plaintiff has been forced and/or will be forced to incur expenses for medical and/or psychiatric care, X-rays, and/or laboratory costs during the period of

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 167

1  Plaintiff's disability, and is informed and believes, and thereon alleges, she may be and/or will in

2  the future be forced to incur additional expenses of the same nature, all in an amount which is at

3  present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at

4  the time of trial.

5  46.      Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since

6  said incidents has been and/or will be unable to engage fully in Plaintiff's occupation, and is

7  informed and believes, and thereon alleges, that Plaintiff will and/or may be fully and/or partially

8  incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in

9  the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will

10  pray leave of court to show the total amount of loss of earnings at the time of trial.

11  47.      As a further direct and legal result of the acts and conduct of Defendants Wind Water and

12  CEO Kelemen and DOES 1 through 100, Plaintiff has been caused and/or may be caused, and

13  did suffer and/or may suffer, and continues to suffer severe and permanent emotional and/or

14  mental distress and/or anguish, humiliation, embarrassment, fright, shock, pain, discomfort,

15  and/or anxiety, as well as risk and fear of potential sexually transmitted diseases. The exact

16  nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court

17  to assert the same when they are ascertained.

18  48.      The aforementioned acts of Defendants Wind Water and CEO Kelemen and DOES 1

19  through 100, and each of them, were willful, wanton, malicious, intentional, oppressive and/or

20  despicable and were done in willful and conscious disregard of the rights, welfare and safety of

21  Plaintiff, and were done by managerial agents and employees of Defendant Wind Water and

22  DOES 1 through 100, and with the express knowledge, consent, and/or ratification of managerial

23  agents and employees of Defendant Wind Water and DOES 1 through 100, thereby justifying the

24  awarding of punitive and exemplary damages in an amount to be determined at the time of trial

25  pursuant to California Civil Code § 3294(a) and (b).

26  49.      By the aforesaid acts and conduct of Defendants and DOES 1 through 100, Plaintiff has

27  been directly and legally caused to suffer actual damages pursuant to Cal. Civil Code § 3333

28  including, but not limited to, loss of earnings and future earning capacity, medical and related

1    expenses for care and procedures both now and in the future, attorney's fees, and/or other

2    pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend

3    when ascertained.

4    50.    Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

5                                                    **III.**

6                                    **THIRD CAUSE OF ACTION**

7                                              **For Battery**

8    **Against Defendants KELEMEN, WIND WATER, & DOES 1 Through 100, Only**

9    51.    Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this

10   Complaint as though duly set forth in full herein.

11   52.    As alleged herein, Defendant CEO Kelemen battered Plaintiff as he intentionally caused

12   harmful or offensive contact with Plaintiff, which Plaintiff did not consent to.

13   53.    As alleged, on or about December 7, 2013, Defendant CEO Kelemen intentionally

14   battered Plaintiff at the 2013 company holiday party, which was held at a dance club, as he

15   approached Plaintiff while she was dancing and inappropriately touched and groped her body

16   without her consent.

17   54.    In doing the aforementioned, Defendant CEO Kelemen acted with the intent to cause a

18   harmful or offensive contact with Plaintiff.

19   55.    Indeed, Plaintiff protested Defendant CEO Kelemen's behavior and quickly walked away

20   from him.

21   56.    Thereafter, on or about September 5, 2014, Defendant CEO Kelemen battered Plaintiff as

22   he grabbed her by the elbow and pulled her outside the restaurant to a secluded alcove by the

23   water against her consent.

24   57.    When Plaintiff attempted to flee the alcove, Defendant CEO Kelemen blocked her with

25   his legs, thereby battering Plaintiff by touching her in a harmful and/or offensive manner.

26   58.    Defendant CEO Kelemen then battered Plaintiff by grabbing her by her wrists and/or

27   arms against her consent, thereby touching her in a harmful and/or offensive manner.

28

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 169

59.     In doing all of the acts herein alleged, Defendant CEO Kelemen intended to cause harmful or offensive contact with Plaintiff and did cause such harmful or offensive contact.

60.     Plaintiff did not consent to Defendant Kelemen touching her in such harmful and/or offensive ways.

61.     At all times relevant herein, Defendant Wind Water had knowledge and notice of Defendant CEO Kelemen's violent and/or offensive propensities and is therefore liable for Defendant CEO Kelemen's conduct as a joint participant.

62.     As a direct and legal result of the acts and omissions of Defendants Wind Water and CEO Kelemen and DOES 1 through 100, Plaintiff was rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and/or suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort and/or anxiety.

63.     As a further legal result of the acts and omissions of Defendants Wind Water and CEO Kelemen and DOES 1 through 100, Plaintiff has been forced and/or will be forced to incur expenses for medical and/or psychiatric care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that she will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

64.     Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents has been unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will be fully and/or partially incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

65.     As a further direct and legal result of the acts and conduct of Defendants Wind Water and CEO Kelemen and DOES 1 through 100, Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety. The exact nature and extent of

11

Exhibit I
Page 170

1  said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same

2  when they are ascertained.

3  66.      The aforementioned acts of Defendants Wind Water and CEO Kelemen and DOES 1

4  through 100, and each of them, were willful, wanton, malicious, intentional, oppressive and/or

5  despicable and were done in willful and conscious disregard of the rights, welfare and safety of

6  Plaintiff, thereby justifying the awarding of punitive and exemplary damages against in an

7  amount to be determined at the time of trial pursuant to California Civil Code § 3294(a) and (b).

8  67.      By the aforesaid acts and conduct of Defendants Wind Water and CEO Kelemen and

9  DOES 1 through 100, Plaintiff has been directly and legally caused to suffer actual damages

10  pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future

11  earning capacity, medical and related expenses for care and procedures both now and in the

12  future, attorney's fees, and/or other pecuniary loss not presently ascertained, for which Plaintiff

13  will seek leave of court to amend when ascertained.

14  68.      Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

15                                              **IV.**

16                            **FOURTH CAUSE OF ACTION**

17                              **For False Imprisonment**

18    **Against Defendants KELEMEN, WIND WATER, & DOES 1 Through 100, Only**

19  69.      Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this

20  Complaint as though duly set forth in full herein.

21  70.      Defendant Kelemen intentionally deprived Plaintiff of her freedom of movement by use

22  of force, threats of force, menace, deceit and/or unreasonable duress.

23  71.      On or about September 5, 2014, at Defendant Wind Water's company "Team Building

24  Event," Defendant CEO Kelemen grabbed Plaintiff by the elbow and pulled her outside the

25  restaurant to a secluded alcove by the water, against her consent.

26  72.      In restraining, confining, and/or detaining Plaintiff, Defendant CEO compelled Plaintiff

27  to go to the alcove, and remain there for some appreciable time.

28

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 171

73.   When Plaintiff attempted to flee the alcove, Defendant CEO Kelemen blocked her with his legs, and in doing so restrained, confined, and/or detained Plaintiff, thereby false imprisoning her.

74.   Defendant CEO Kelemen then grabbed Plaintiff by her wrists and/or arms against her consent, also in an attempt to restrain, confine, and/or detain her as Plaintiff was attempting to fight Defendant CEO Kelemen off with her hands.

75.   Defendant CEO Kelemen also forcefully grabbed Plaintiff and placed his hand over her mouth in an attempt to restrain, confine, and/or detain Plaintiff.

76.   Defendant CEO Kelemen then, while still constraining and/or restraining Plaintiff, started kissing her lips and/or face and touched her vagina and rectum with his hand(s) and/or fingers against her consent.

77.   Defendant CEO Kelemen then forced Plaintiff to engage in oral copulation as he pushed Plaintiff to her knees, forced his penis into her mouth, and demanded he "finish [him] off," despite Plaintiff's pleas that he stop.

78.   In doing all of the acts herein alleged, Defendant CEO Kelemen intended to cause harmful or offensive contact with Plaintiff and did directly cause such harmful or offensive contact.

79.   Plaintiff did not consent to Defendant CEO Kelemen depriving her of her freedom of movement.

80.   Indeed, throughout the encounter, Plaintiff repeatedly protested Defendant CEO Kelemen's behavior, yelling "no" multiple times and fighting him off with her hands. Plaintiff was also hysterical and crying throughout the encounter, further demonstrating she did not consent to being deprived of her freedom of movement.

81.   At all times herein relevant, Defendant CEO Kelemen was acting within the course and scope of his employment with Defendant Wind Water. As such, Defendant Wind Water is liable for the aforesaid acts of Defendant CEO Kelemen.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 172

1   82.    Plaintiff submitted a complaint letter on or about October 26, 2014 to Defendant Wind

2   Water and Defendant CEO Kelemen, complaining about being falsely imprisoned and thereafter

3   sexually assaulted and battered by Defendant CEO Kelemen.

4   83.    Despite Plaintiff's complaint(s), Defendant Wind Water failed to take corrective and/or

5   remedial measures. Instead, upon receipt of Plaintiff's complaint letter, Defendant Director Doan

6   sent Plaintiff a text message in which she referred to Plaintiff as a "fucken whore" and accused

7   her of lying. As such, Defendant Wind Water ratified and condoned Defendant CEO Kelemen's

8   violent workplace conduct.

9   84.    As a direct and legal result of the acts and omissions of Defendants Wind Water and CEO

10  Kelemen and DOES 1 through 100, Plaintiff was rendered and/or may be rendered sick, sore,

11  lame, disabled and/or disordered, both internally and externally, and/or suffered and/or may

12  suffer, among other things, numerous internal injuries, severe fright, shock, pain, discomfort,

13  and/or anxiety, as well as risk and fear of sexually transmitted diseases.

14  85.    As a further legal result of the acts and omissions of Defendants Wind Water and CEO

15  Kelemen and DOES 1 through 100, Plaintiff has been forced and/or will be forced to incur

16  expenses for medical and/or psychiatric care, X-rays, and/or laboratory costs during the period of

17  Plaintiff's disability, and is informed and believes, and thereon alleges, she may be and/or will in

18  the future be forced to incur additional expenses of the same nature, all in an amount which is at

19  present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at

20  the time of trial.

21  86.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since

22  said incidents has been and/or will be unable to engage fully in Plaintiff's occupation, and is

23  informed and believes, and thereon alleges, that Plaintiff will and/or may be fully and/or partially

24  incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in

25  the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will

26  pray leave of court to show the total amount of loss of earnings at the time of trial.

27  87.    As a further direct and legal result of the acts and conduct of Defendants Wind Water and

28  CEO Kelemen and DOES 1 through 100, Plaintiff has been caused and/or may be caused, and

14

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 173

1   did suffer and/or may suffer, and continues to suffer severe and permanent emotional and/or

2   mental distress and/or anguish, humiliation, embarrassment, fright, shock, pain, discomfort,

3   and/or anxiety, as we as risk and fear of sexually transmitted diseases. The exact nature and

4   extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the

5   same when they are ascertained.

6   88.     The aforementioned acts of Defendants Wind Water and CEO Kelemen and DOES 1

7   through 100, and each of them, were willful, wanton, malicious, intentional, oppressive and/or

8   despicable and were done in willful and conscious disregard of the rights, welfare and safety of

9   Plaintiff, and were done by managerial agents and employees of Defendant Wind Water and

10  DOES 1 through 100, and with the express knowledge, consent, and/or ratification of managerial

11  agents and employees of Defendant Wind Water and DOES 1 through 100, thereby justifying the

12  awarding of punitive and exemplary damages in an amount to be determined at the time of trial

13  pursuant to California Civil Code § 3294(a) and (b).

14  89.     By the aforesaid acts and conduct of Defendants Wind Water and CEO Kelemen and

15  DOES 1 through 100, Plaintiff has been directly and legally caused to suffer actual damages

16  pursuant to Cal. Civil Code § 3333 including, but not limited to, loss of earnings and future

17  earning capacity, medical and related expenses for care and procedures both now and in the

18  future, attorney's fees, and/or other pecuniary loss not presently ascertained, for which Plaintiff

19  will seek leave of court to amend when ascertained.

20  90.     Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

21                                              **V.**

22                            **FIFTH CAUSE OF ACTION**

23                      **For Sex/Gender Harassment in Employment**

24                 **[California Government Code §§ 12940 et seq.]**

25                 **Against All Defendants & DOES 1 Through 100, Inclusive**

26  91.     Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this

27  Complaint as though duly set forth in full herein.

28

Exhibit I
Page 174

92.     At all times relevant herein, Plaintiff's sex/gender (female) made her a member of a protected class pursuant to the FEHA.

93.     On a severe and/or pervasive basis beginning in or around August 2013 continuing at least through the time of Plaintiff's wrongful constructive termination on or about October 26, 2014, and continuing, all Defendants and DOES 1 through 100, and each of them, harassed Plaintiff due to and substantially motivated by Plaintiff's sex/gender and/or subjected Plaintiff to a quid pro quo, sexually charged, and hostile work environment through the following actions, among others:

       a)     Defendant CEO Kelemen subjected Plaintiff and the other female employees to sex/gender harassment by repeatedly referring to them as "girls," "my girls" or "the girls."

       b)     Defendant CEO Kelemen also allowed his male employees to make inappropriate comments to and around the female employees, often joining them in making such comments and/or laughing along with them.

       c)     Defendant Director Doan also harassed Plaintiff based on her sex/gender, including by making comments such as "grow a pair" to Plaintiff when Plaintiff told Defendant Director Doan she did not feel comfortable speaking with Defendant CEO Kelemen.

       d)     Moreover, as described herein, Defendant CEO Kelemen harassed Plaintiff and subjected her to a quid pro quo environment by sexually assaulting and battering Plaintiff on at least two different occasions.

       e)     On or about December 7, 2013, Defendant CEO Kelemen assaulted and battered Plaintiff at the 2013 company holiday party, which was held at a dance club, as he approached Plaintiff while she was dancing and inappropriately touched and groped her body without her consent. Plaintiff protested his behavior and quickly walked away from him.

       f)     Thereafter, on or about September 5, 2014, at Defendant Wind Water's company "Team Building Event," Defendant CEO Kelemen grabbed Plaintiff by the elbow and

16

Exhibit I
Page 175

1   pulled her outside the restaurant to a secluded alcove by the water. When Plaintiff
2   attempted to flee the alcove, Defendant CEO Kelemen blocked her with his legs,
3   forcefully grabbed her, placed his hand over her mouth, and then started kissing her lips
4   and/or face without her consent.

5   g)      Defendant CEO Kelemen further sexually battered Plaintiff as he touched
6   Plaintiff's vagina and rectum with his hand(s) and/or fingers without her consent.

7   h)      Defendant CEO Kelemen then forced Plaintiff to engage in oral copulation as he
8   pushed Plaintiff to her knees, forced his penis into her mouth, and demanded he "finish
9   [him] off," despite Plaintiff's pleas that he stop, thereby sexually harassing her.

10  i)      On the following work day, Defendant CEO Kelemen approached Plaintiff and
11  attempted to speak with her, at which time she turned and walked away. Indeed, Plaintiff
12  minimized her contact with Defendant CEO Kelemen after the September 5, 2014
13  incident, thereby rejecting and/or denying Defendant CEO Kelemen's sexual advances.

14  j)      As a result and based, in part, on Plaintiff's sex/gender, Defendant CEO Kelemen
15  harassed Plaintiff as he refused to give Plaintiff her annual review, which she was
16  previously promised and entitled to.

17  k)      Defendant CEO Kelemen also harassed Plaintiff based on her sex/gender as he
18  refused to give Plaintiff her annual bonus, which she was previously promised and
19  entitled to.

20  l)      Plaintiff specifically complained about the sexual battery committed by
21  Defendant CEO Kelemen. Indeed, on or about October 26, 2014, Plaintiff submitted a
22  written complaint Defendant Wind Water and Defendant CEO Kelemen, stating,
23  "September 5th, at Newport Beach Yacht Club, you made unwanted advances towards me
24  and touched me in an unprofessional manner (including kissing me and groping me). You
25  are well aware that sexual assault and touching your employees is against the law."

26  m)      Plaintiff also complained of the sex/gender harassment and quid pro quo
27  environment in her October 26, 2014 complaint letter, stating, "...you knowingly allow
28  for an unhealthy and unprofessional work environment to exist where woman are treated

17

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 176

1  with very little respect (calling us "girls" or "your girls" or "the girls"). You knowingly

2  allow your male staff to be vile, disgusting and unprofessional. In any other organization

3  this is clearly sexual harassment and failure of management's responsibility to create and

4  sustain a professional work environment."

5  n)      Despite Plaintiff's complaint(s), Defendant Wind Water failed to take corrective

6  and/or remedial measures. Instead, upon receipt of Plaintiff's complaint letter, Defendant

7  Director Doan sent Plaintiff a text message in which she referred to Plaintiff as a "fucken

8  whore" and accused her of lying. As such, Defendant Wind Water ratified and condoned

9  Defendant CEO Kelemen's violent workplace conduct.

10  o)      As a result of the aforementioned conduct based on Plaintiff's sex/gender,

11  Plaintiff was wrongfully constructively terminated on or about October 26, 2014.

12  94.     In doing the acts alleged herein, Defendants and DOES 1 through 100, and each of them,

13  were substantially motivated by Plaintiff's sex/gender.

14  95.     At all times relevant herein, Plaintiff considered her work environment to be sexually

15  charged, hostile, and/or abusive and herein also alleges that a reasonable person in Plaintiff's

16  circumstances would have considered the work environment to be sexually charged, hostile, or

17  abusive.

18  96.     At all times relevant herein, Plaintiff believes and further alleges Defendant Wind Water

19  and/or its agents/representatives failed to timely, properly, and/or completely investigate the

20  harassment Plaintiff was routinely subjected to based on her sex/gender.

21  97.     The acts and conduct of aforesaid Defendants and DOES 1 through 100, and each of

22  them, as aforesaid, were in violation of California Government Code §§ 12940 et seq. Said

23  statutes impose certain duties upon Defendants and DOES 1 through 100, and each of them,

24  concerning harassment against persons, such as Plaintiff, on the basis of sex/gender. Said statutes

25  were intended to prevent the type of injury and damage herein set forth.

26  98.     Prior to the initiation of this lawsuit, Plaintiff filed a timely complaint against each named

27  Defendant with the DFEH pursuant to Cal. Government Code § 12900 et seq. and has received

28  Right-to-Sue notices in a California Superior Court pursuant to California Government Code §

18

1  12965(b). Attached hereto and incorporated herein as Exhibit "A" are said Complaints and by
2  reference hereto are made a part hereof. Attached hereto and incorporated herein as Exhibit "B"
3  are said Right-to-Sue notices and by reference hereto are made a part hereof. Plaintiff has
4  therefore exhausted her administrative remedies under the California Government Code.

5  99.     As a direct and legal result of the acts and omissions of Defendants and DOES 1 through
6  100, Plaintiff was rendered and/or may be rendered sick, sore, lame, disabled and/or disordered,
7  both internally and externally, and/or suffered and/or may suffer, among other things, numerous
8  internal injuries, severe fright, shock, pain, discomfort, and/or anxiety, as well as risk and fear of
9  sexually transmitted diseases.

10  100.    As a further legal result of the acts and omissions of Defendants and DOES 1 through
11  100, Plaintiff has been forced and/or will be forced to incur expenses for medical and/or
12  psychiatric care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is
13  informed and believes, and thereon alleges, she may be and/or will in the future be forced to
14  incur additional expenses of the same nature, all in an amount which is at present unknown.
15  Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

16  101.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since
17  said incidents has been and/or will be unable to engage fully in Plaintiff's occupation, and is
18  informed and believes, and thereon alleges, that Plaintiff will and/or may be fully and/or partially
19  incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in
20  the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will
21  pray leave of court to show the total amount of loss of earnings at the time of trial.

22  102.    As a further direct and legal result of the acts and conduct of Defendants and DOES 1
23  through 100, Plaintiff has been caused and/or may be caused, and did suffer and/or may suffer,
24  and continues to suffer severe and permanent emotional and/or mental distress and/or anguish,
25  humiliation, embarrassment, fright, shock, pain, discomfort, and/or anxiety, as well as risk and
26  fear of sexually transmitted diseases. The exact nature and extent of said injuries is presently
27  unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

28

103.    The aforementioned acts of Defendants and DOES 1 through 100, and each of them, were willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendant Wind Water and DOES 1 through 100, and with the express knowledge, consent, and/or ratification of managerial agents and employees of Defendant Wind Water and DOES 1 through 100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial pursuant to California Civil Code § 3294(a) and (b).

104.    By the aforesaid acts and conduct of Defendants and DOES 1 through 100, Plaintiff has been directly and legally caused to suffer actual damages pursuant to Cal. Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorney's fees, and/or other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

105.    As a result of the harassing acts of Defendants and DOES 1 through 100, as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of said suit as specifically provided in California Government Code § 12965(b).

106.    Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

**VI.**

**SIXTH CAUSE OF ACTION**

**For Sex/Gender Discrimination in Employment**

**[California Government Code §§ 12940 et seq.]**

**Against Defendants WIND WATER & DOES 1 Through 100, Only**

107.    Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this Complaint as though duly set forth in full herein.

108.    Plaintiff was treated differently in the terms and conditions of her employment due to her sex/gender (female).

1    109.    At all times relevant herein, Plaintiff's sex/gender made her a member of a protected
2    class pursuant to the FEHA.

3    110.    At all times relevant herein, Plaintiff was qualified for and competently performed the
4    position(s) she held throughout her employment with Defendant Wind Water.

5    111.    As a result of and substantially motivated by Plaintiff's sex/gender, Defendants and
6    DOES 1 through 100, and each of them, subjected Plaintiff to discriminatory treatment and/or
7    adverse employment actions including the following, among others:

8          a)      Plaintiff was treated differently, disparately, and/or negatively because of her
9          sex/gender and/or her aforesaid legally protected activities (complaints/protests),
10         including Defendants subjecting Plaintiff to harassing and discriminatory statements
11         and/or conduct on a severe and/or pervasive basis, denying her opportunities, denying her
12         a review and/or bonus she was entitled to, subjecting Plaintiff to disparate working terms
13         and conditions, and/or wrongfully constructively terminating Plaintiff.

14         b)      As described herein, Defendant CEO Kelemen discriminated against Plaintiff and
15         subjected her to a quid pro quo environment by sexually assaulting and battering Plaintiff
16         on at least two different occasions.

17         c)      On or about December 7, 2013, Defendant CEO Kelemen assaulted and battered
18         Plaintiff at the 2013 company holiday party, which was held at a dance club, as he
19         approached Plaintiff while she was dancing and inappropriately touched and groped her
20         body without her consent. Plaintiff protested his behavior and quickly walked away from
21         him.

22         d)      Thereafter, on or about September 5, 2014, at Defendant Wind Water's company
23         "Team Building Event," Defendant CEO Kelemen grabbed Plaintiff by the elbow and
24         pulled her outside the restaurant to a secluded alcove by the water. When Plaintiff
25         attempted to flee the alcove, Defendant CEO Kelemen blocked her with his legs,
26         forcefully grabbed her, placed his hand over her mouth, and then started kissing her lips
27         and/or face without her consent.

28

<center>21</center>
<center>**FIRST AMENDED COMPLAINT FOR DAMAGES**</center>

Exhibit I
Page 180

e)      Defendant CEO Kelemen further sexually battered Plaintiff as he touched Plaintiff's vagina and rectum with his hand(s) and/or fingers without her consent.

f)      Defendant CEO Kelemen then forced Plaintiff to engage in oral copulation as he pushed Plaintiff to her knees, forced his penis into her mouth, and demanded he "finish [him] off," despite Plaintiff's pleas that he stop.

g)      On the following work day, Defendant CEO Kelemen approached Plaintiff and attempted to speak with her, at which time she turned and walked away. Indeed, Plaintiff minimized her contact with Defendant CEO Kelemen after the September 5, 2014 incident, thereby rejecting and/or denying Defendant CEO Kelemen's sexual advances.

h)      As a result and based, in part, on Plaintiff's sex/gender, Defendant CEO Kelemen harassed Plaintiff as he refused to give Plaintiff her annual review, which she was previously promised and entitled to.

i)      Defendant CEO Kelemen also harassed Plaintiff based on her sex/gender as he refused to give Plaintiff her annual bonus, which she was previously promised and entitled to.

j)      In addition to the aforementioned egregious conduct, Defendant CEO Kelemen subjected Plaintiff and the other female employees to sex/gender discrimination by repeatedly referring to them as "girls," "my girls" or "the girls."

k)      Defendant CEO Kelemen also allowed his male employees to make inappropriate comments to and around the female employees, often joining them in making such comments and/or laughing along with them.

l)      Defendant Director Doan also discriminated against Plaintiff based on her sex/gender, including by making comments such as "grow a pair" to Plaintiff when Plaintiff told Defendant Director Doan she did not feel comfortable speaking with Defendant CEO Kelemen

m)      Plaintiff specifically complained about the sexual battery committed by Defendant CEO Kelemen. Indeed, on or about October 26, 2014, Plaintiff submitted a written complaint Defendant Wind Water and Defendant CEO Kelemen, stating,

22

"September 5th, at Newport Beach Yacht Club, you made unwanted advances towards me and touched me in an unprofessional manner (including kissing me and groping me). You are well aware that sexual assault and touching your employees is against the law."

n)     Plaintiff also complained of the sex/gender discrimination and quid pro quo environment in her October 26, 2014 complaint letter, stating, "...you knowingly allow for an unhealthy and unprofessional work environment to exist where woman are treated with very little respect (calling us "girls" or "your girls" or "the girls"). You knowingly allow your male staff to be vile, disgusting and unprofessional. In any other organization this is clearly sexual harassment and failure of management's responsibility to create and sustain a professional work environment."

o)     Despite Plaintiff's complaint(s), Defendant Wind Water failed to take corrective and/or remedial measures. Instead, upon receipt of Plaintiff's complaint letter, Defendant Director Doan sent Plaintiff a text message in which she referred to Plaintiff as a "fucken whore" and accused her of lying. As such, Defendant Wind Water ratified and condoned Defendant CEO Kelemen's violent workplace conduct.

p)     As a result of the aforementioned conduct based on Plaintiff's sex/gender, Plaintiff was wrongfully constructively terminated on or about October 26, 2014.

112.   In doing the acts alleged herein, Defendants and DOES 1 through 100, and each of them, were substantially motivated by Plaintiff's sex/gender.

113.   At all times relevant herein, Plaintiff believes and further alleges Defendant Wind Water and/or its agents/representatives failed to timely, properly, and/or completely investigate the discrimination Plaintiff was routinely subjected to based on her sex/gender.

114.   The acts and conduct of Defendants and DOES 1 through 100, and each of them, as aforesaid, were in violation of Cal. Gov. Code §§ 12940 et seq. Said statutes impose certain duties upon Defendants and DOES 1 through 100, and each of them, concerning discrimination against persons, such as Plaintiff, on the basis of sex/gender. Said statutes were intended to prevent the type of injury and damage herein set forth.

115.    Prior to the initiation of this lawsuit, Plaintiff filed a timely complaint against each named Defendant with the DFEH pursuant to Cal. Gov. Code § 12900 et seq. and has received Right-to-Sue notices in a California Superior Court pursuant to California Government Code § 12965(b). Attached hereto and incorporated herein as Exhibit "A" are said Complaints and by reference hereto are made a part hereof. Attached hereto and incorporated herein as Exhibit "B" are said Right-to-Sue notices and by reference hereto are made a part hereof. Plaintiff has therefore exhausted her administrative remedies under the California Government Code.

116.    As a direct and legal result of the acts and omissions of Defendants and DOES 1 through 100, Plaintiff was rendered and/or may be rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and/or suffered and/or may suffer, among other things, numerous internal injuries, severe fright, shock, pain, discomfort, and/or anxiety, as well as risk and fear of sexually transmitted diseases.

117.    As a further legal result of the acts and omissions of Defendants and DOES 1 through 100, Plaintiff has been forced and/or will be forced to incur expenses for medical and/or psychiatric care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, she may be and/or will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

118.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents has been and/or will be unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will and/or may be fully and/or partially incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

119.    As a further direct and legal result of the acts and conduct of Defendants and DOES 1 through 100, Plaintiff has been caused and/or may be caused, and did suffer and/or may suffer, and continues to suffer severe and permanent emotional and/or mental distress and/or anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and/or anxiety, as well as risk and

24

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 183

1    fear of sexually transmitted diseases. The exact nature and extent of said injuries is presently

2    unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

3    120.    The aforementioned acts of Defendants and DOES 1 through 100, and each of them, were

4    willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful

5    and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by

6    managerial agents and employees of Defendant Wind Water and DOES 1 through 100, and with

7    the express knowledge, consent, and/or ratification of managerial agents and employees of

8    Defendant Wind Water and DOES 1 through 100, thereby justifying the awarding of punitive

9    and exemplary damages in an amount to be determined at the time of trial pursuant to California

10    Civil Code § 3294(a) and (b).

11    121.    By the aforesaid acts and conduct of Defendants and DOES 1 through 100, Plaintiff has

12    been directly and legally caused to suffer actual damages pursuant to Cal. Civil Code § 3333

13    including, but not limited to, loss of earnings and future earning capacity, medical and related

14    expenses for care and procedures both now and in the future, attorney's fees, and/or other

15    pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend

16    when ascertained.

17    122.    As a result of the discriminatory acts of Defendants and DOES 1 through 100, as alleged

18    herein, Plaintiff is entitled to reasonable attorney's fees and costs of said suit as specifically

19    provided in California Government Code § 12965(b).

20    123.    Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

21    **VII.**

22    **SEVENTH CAUSE OF ACTION**

23    **For Sex/Gender Retaliation in Employment**

24    **[California Government Code §§ 12940 et seq.]**

25    **Against Defendants WIND WATER & DOES 1 Through 100, Only**

26    124.    Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this

27    Complaint as though duly set forth in full herein.

28

125.    Plaintiff was, at all times material hereto, a female employee who engaged in legally protected activities and within a protected class covered by the FEHA, prohibiting retaliation in employment predicated on sex/gender.

126.    Plaintiff engaged in legally protected conduct and/or asserted her legal rights on the following occasions, among others:

a)      Plaintiff, on at least two occasions, refused and/or denied Defendant CEO Kelemen's sexual advances, including by walking away from him, attempting to flee, repeatedly telling him "no," fighting him off with her hands, pleading with him for him to stop his egregious conduct, and crying hysterically.

b)      On the following work day after the September 5, 2014 assault and sexual battery, Defendant CEO Kelemen approached Plaintiff and attempted to speak with her, at which time she turned and walked away. Indeed, Plaintiff minimized her contact with Defendant CEO Kelemen after the September 5, 2014 incident, thereby again rejecting and/or denying Defendant CEO Kelemen's sexual advances.

c)      Plaintiff also engaged in legally protected activity and complained about the sexual battery committed by Defendant CEO Kelemen. Indeed, on or about October 26, 2014, Plaintiff submitted a written complaint Defendant Wind Water and Defendant CEO Kelemen, stating, "September 5th, at Newport Beach Yacht Club, you made unwanted advances towards me and touched me in an unprofessional manner (including kissing me and groping me). You are well aware that sexual assault and touching your employees is against the law."

d)      Plaintiff also complained of the sex/gender harassment and quid pro quo environment in her October 26, 2014 complaint letter, stating, "…you knowingly allow for an unhealthy and unprofessional work environment to exist where woman are treated with very little respect (calling us "girls" or "your girls" or "the girls"). You knowingly allow your male staff to be vile, disgusting and unprofessional. In any other organization this is clearly sexual harassment and failure of management's responsibility to create and sustain a professional work environment."

FIRST AMENDED COMPLAINT FOR DAMAGES

Exhibit I
Page 185

127.   However, as a result of and substantially motivated by Plaintiff engaging in the aforesaid protected activities (assertion of legal rights, complaints, and/or protests) and her sex/gender, Defendants and DOES 1 through 100, and each of them, subjected Plaintiff to the following retaliatory adverse employment actions including the following, among others:

a)   Plaintiff was treated differently, disparately, and/or negatively because of her sex/gender and/or her aforesaid legally protected activities (complaints/protests), including Defendants subjecting Plaintiff to harassing and discriminatory statements and/or conduct on a severe and/or pervasive basis, denying her opportunities, denying her a review and/or bonus she was entitled to, subjecting Plaintiff to disparate working terms and conditions, and/or wrongfully constructively terminating Plaintiff.

b)   As a result of Plaintiff's aforementioned protests, including denying and/or rejecting Defendant CEO Kelemen's sexual advances, Defendant CEO Kelemen retaliated against Plaintiff and refused to give Plaintiff her annual review, which she was previously promised and entitled to.

c)   Defendant CEO Kelemen also retaliated against Plaintiff as he refused to give Plaintiff her annual bonus, which she was also previously promised and entitled to.

d)   Defendant Director Doan also retaliated against Plaintiff by telling Plaintiff to "grow a pair" when Plaintiff told Defendant Director Doan she did not feel comfortable speaking with Defendant CEO Kelemen.

e)   Upon receipt of Plaintiff's complaint letter, Defendant Director Doan retaliated against Plaintiff and sent her a text message in which she referred to Plaintiff as a "fucken whore" and accused her of lying. As such, rather than take corrective and/or remedial measures, Defendant Wind Water ratified and condoned Defendant CEO Kelemen's behavior.

f)   As a result of the aforementioned conduct based on Plaintiff's sex/gender, Plaintiff was wrongfully constructively terminated on or about October 26, 2014.

128.   In doing the acts alleged herein, Defendants and DOES 1 through 100, and each of them, were substantially motivated by Plaintiff's sex/gender and aforesaid legally protected activities.

27

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 186

129.    At all times relevant herein, Plaintiff believes and further alleges Defendant Wind Water and/or its agents/representatives failed to timely, properly, and/or completely investigate the discrimination Plaintiff was routinely subjected to based on her sex/gender.

130.    The acts and conduct of Defendants and DOES 1 through 100, and each of them, as aforesaid, were in violation of California Government Code §§ 12940 et seq. Said statutes impose certain duties upon Defendants, and each of them, concerning retaliation against persons, such as Plaintiff, on the basis of sex/gender and the prohibition of sex/gender retaliation. Said statutes were intended to prevent the type of injury and damage herein set forth.

131.    Prior to the initiation of this lawsuit, Plaintiff filed a timely complaint against each named Defendant with the DFEH pursuant to Cal. Government Code § 12900 et seq. and has received Right-to-Sue notices in a California Superior Court pursuant to California Government Code § 12965(b). Attached hereto and incorporated herein as Exhibit "A" are said Complaints and by reference hereto are made a part hereof. Attached hereto and incorporated herein as Exhibit "B" are said Right-to-Sue notices and by reference hereto are made a part hereof. Plaintiff has therefore exhausted her administrative remedies under the California Government Code.

132.    As a direct and legal result of the acts and omissions of Defendants and DOES 1 through 100, Plaintiff was rendered and/or may be rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and/or suffered and/or may suffer, among other things, numerous internal injuries, severe fright, shock, pain, discomfort, and/or anxiety, as well as risk and fear of sexually transmitted diseases.

133.    As a further legal result of the acts and omissions of Defendants and DOES 1 through 100, Plaintiff has been forced and/or will be forced to incur expenses for medical and/or psychiatric care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, she may be and/or will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

134.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents has been and/or will be unable to engage fully in Plaintiff's occupation, and is

28

1    informed and believes, and thereon alleges, that Plaintiff will and/or may be fully and/or partially

2    incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in

3    the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will

4    pray leave of court to show the total amount of loss of earnings at the time of trial.

5    135.     As a further direct and legal result of the acts and conduct of Defendants and DOES 1

6    through 100, Plaintiff has been caused and/or may be caused, and did suffer and/or may suffer,

7    and continues to suffer severe and permanent emotional and/or mental distress and/or anguish,

8    humiliation, embarrassment, fright, shock, pain, discomfort, and/or anxiety, as well as risk and

9    fear of sexually transmitted diseases. The exact nature and extent of said injuries is presently

10    unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

11    136.     The aforementioned acts of Defendants and DOES 1 through 100, and each of them, were

12    willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful

13    and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by

14    managerial agents and employees of Defendant Wind Water and DOES 1 through 100, and with

15    the express knowledge, consent, and/or ratification of managerial agents and employees of

16    Defendant Wind Water and DOES 1 through 100, thereby justifying the awarding of punitive

17    and exemplary damages in an amount to be determined at the time of trial pursuant to California

18    Civil Code § 3294(a) and (b).

19    137.     By the aforesaid acts and conduct of Defendants and DOES 1 through 100, Plaintiff has

20    been directly and legally caused to suffer actual damages pursuant to Cal. Civil Code § 3333

21    including, but not limited to, loss of earnings and future earning capacity, medical and related

22    expenses for care and procedures both now and in the future, attorney's fees, and/or other

23    pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend

24    when ascertained.

25    138.     As a result of the retaliatory acts of Defendants and DOES 1 through 100, as alleged

26    herein, Plaintiff is entitled to reasonable attorney's fees and costs of said suit as specifically

27    provided in California Government Code § 12965(b).

28    139.     Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

## VIII.

### EIGHTH CAUSE OF ACTION

**For Race/National Origin Harassment in Employment**

**[California Government Code §§ 12940 et seq.]**

**Against Defendants KELEMEN, WIND WATER & DOES 1 Through 100, Only**

140.    Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this Complaint as though duly set forth in full herein.

141.    At all times relevant herein, Plaintiff's race/national origin (Asian) made her a member of a protected class pursuant to the FEHA.

142.    Plaintiff also associated with and/or advocated for a member of a protected class (Jewish).

143.    On a severe and/or pervasive basis beginning in or around August 2013 continuing at least through the time of Plaintiff's wrongful constructive termination on or about October 26, 2014, and continuing, Defendants Wind Water, CEO Kelemen and DOES 1 through 100, and each of them, harassed Plaintiff due to and substantially motivated by Plaintiff's race/national origin (Asian), as well as Plaintiff's advocacy of and/or association with a member of a protected class (Jewish), including the following actions, among others:

   a)    As a means of harassing Plaintiff based on her race/national origin, Defendant CEO Kelemen often mockingly imitated clients with Asian accents in Plaintiff's presence.

   b)    Defendant CEO Kelemen also often stated, in Plaintiff's presence and/or to her, "You know how the Chinese are" when referring to Chinese clients and their business transactions.

   c)    Knowing Plaintiff's long-term boyfriend and son are both Jewish, Defendant CEO Kelemen often made inappropriate comments about Jewish clients to and/or in front of Plaintiff. For example, Defendant CEO Kelemen repeatedly "He's just being a Jew" whenever a client did not want to spend over a particular amount.

d)      Defendant CEO Kelemen also repeatedly stated, in a condescending and negative manner, "He's a Jew, he won't spend that kind of money on that deal." Defendant CEO Kelemen made such inappropriate comments in Plaintiff's presence.

e)      Defendant CEO Kelemen also repeatedly stated, in Plaintiff's presence, "What do you expect, he's a Jew."

f)      Plaintiff protested Defendant CEO Kelemen's unlawful comments and conduct by shaking her head, rolling her eyes, and/or putting on her headphones in an attempt to ignore him. In doing so, Plaintiff associated with and/or advocated for a member(s) of a protected class.

g)      Based, in part, on her race/national origin and/or association with and/or advocacy of another member of a protected class, Plaintiff was wrongfully constructively terminated from her employment on or about October 26, 2014.

144.    In doing the acts alleged herein, Defendants and DOES 1 through 100, and each of them, were substantially motivated by Plaintiff's race/national origin and/or advocacy of and/or association with members of another protected class (Jewish).

145.    The acts and conduct of Defendants and DOES 1 through 100, and each of them, as aforesaid, were in violation of Cal. Gov. Code §§ 12940 et seq. Said statutes impose certain duties upon Defendants concerning harassment against persons, such as Plaintiff, on the basis of race/national origin and the prohibition of race/national origin harassment. Said statutes were intended to prevent the type of injury and damage herein set forth.

146.    Prior to the initiation of this lawsuit, Plaintiff filed a timely complaint against each named Defendant with the DFEH pursuant to Cal. Government Code § 12900 et seq. and has received Right-to-Sue notices in a California Superior Court pursuant to California Government Code § 12965(b). Attached hereto and incorporated herein as Exhibit "A" are said Complaints and by reference hereto are made a part hereof. Attached hereto and incorporated herein as Exhibit "B" are said Right-to-Sue notices and by reference hereto are made a part hereof. Plaintiff has therefore exhausted her administrative remedies under the California Government Code.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 190

147.    As a direct and legal result of the acts and omissions of Defendants Wind Water and CEO Kelemen and DOES 1 through 100, Plaintiff was rendered and/or may be rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and/or suffered and/or may suffer, among other things, numerous internal injuries, severe fright, shock, pain, discomfort, and/or anxiety.

148.    As a further legal result of the acts and omissions of Defendants Wind Water and CEO Kelemen and DOES 1 through 100, Plaintiff has been forced and/or will be forced to incur expenses for medical and/or psychiatric care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, she may be and/or will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

149.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents has been and/or will be unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will and/or may be fully and/or partially incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

150.    As a further direct and legal result of the acts and conduct of Defendants Wind Water and CEO Kelemen and DOES 1 through 100, Plaintiff has been caused and/or may be caused, and did suffer and/or may suffer, and continues to suffer severe and permanent emotional and/or mental distress and/or anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and/or anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

151.    The aforementioned acts of Defendants Wind Water and CEO Kelemen and DOES 1 through 100, and each of them, were willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendant Wind Water and

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 191

1    DOES 1 through 100, and with the express knowledge, consent, and/or ratification of managerial

2    agents and employees of Defendant Wind Water and DOES 1 through 100, thereby justifying the

3    awarding of punitive and exemplary damages in an amount to be determined at the time of trial

4    pursuant to California Civil Code § 3294(a) and (b).

5    152.   By the aforesaid acts and conduct of Defendants Wind Water and CEO Kelemen and

6    DOES 1 through 100, Plaintiff has been directly and legally caused to suffer actual damages

7    pursuant to Cal. Civil Code § 3333 including, but not limited to, loss of earnings and future

8    earning capacity, medical and related expenses for care and procedures both now and in the

9    future, attorney's fees, and/or other pecuniary loss not presently ascertained, for which Plaintiff

10   will seek leave of court to amend when ascertained.

11   153.   As a result of the harassing acts of Defendants and DOES 1 through 100, as alleged

12   herein, Plaintiff is entitled to reasonable attorney's fees and costs of said suit as specifically

13   provided in California Government Code § 12965(b).

14      154.   Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

15                                            IX.

16                          **NINTH CAUSE OF ACTION**

17                     **Intentional Infliction of Emotional Distress**

18                 **Against All Defendants & DOES 1 Through 100, Inclusive**

19   155.   Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this

20   Complaint as though duly set forth in full herein.

21   156.   The aforesaid conduct of Defendants, and each of them, was so extreme and outrageous

22   as to exceed all bounds of that usually tolerated in a civilized society, and intended to cause and

23   actually did cause Plaintiff to suffer severe emotional distress.

24   157.   Indeed, on a severe and/or pervasive basis beginning in or around August 2013

25   continuing at least through the time of Plaintiff's wrongful constructive termination on or about

26   October 26, 2014, and continuing, all Defendants and DOES 1 through 100, and each of them,

27   harassed, discriminated, and retaliated against Plaintiff due to and substantially motivated by

28

1   Plaintiff's sex/gender and/or subjected Plaintiff to a quid pro quo, sexually charged work
2   environment.

3   158.    For example, on or about December 7, 2013, Defendant CEO Kelemen assaulted and
4   battered Plaintiff at the 2013 company holiday party, which was held at a dance club, as he
5   approached Plaintiff while she was dancing and inappropriately touched and groped her body
6   without her consent. Plaintiff protested his behavior and quickly walked away from him.

7   159.    Thereafter, on or about September 5, 2014, at Defendant Wind Water's company "Team
8   Building Event," Defendant CEO Kelemen grabbed Plaintiff by the elbow and pulled her outside
9   the restaurant to a secluded alcove by the water. When Plaintiff attempted to flee the alcove,
10  Defendant CEO Kelemen blocked her with his legs, forcefully grabbed her, placed his hand over
11  her mouth, and then started kissing her lips and/or face without her consent.

12  160.    During the same September 5, 2014 encounter, Defendant CEO Kelemen further sexually
13  battered Plaintiff as he touched Plaintiff's vagina and rectum with his hand(s) and/or fingers
14  without her consent. Defendant CEO Kelemen then forced Plaintiff to engage in oral copulation
15  as he pushed Plaintiff to her knees, forced his penis into her mouth, and demanded he "finish
16  [him] off," despite Plaintiff's pleas that he stop.

17  161.    In addition to the aforementioned egregious acts, Defendant CEO Kelemen subjected
18  Plaintiff and the other female employees to sex/gender harassment by repeatedly referring to
19  them as "girls," "my girls" or "the girls."

20  162.    Defendant CEO Kelemen also allowed his male employees to make inappropriate
21  comments to and around the female employees, often joining them in making such comments
22  and/or laughing along with them.

23  163.    Defendant Director Doan also harassed Plaintiff based on her sex/gender, including by
24  making comments such as "grow a pair" to Plaintiff when Plaintiff told Defendant Director Doan
25  she did not feel comfortable speaking with Defendant CEO Kelemen.

26  164.    Plaintiff specifically complained about the sexual battery committed by Defendant CEO
27  Kelemen. Indeed, on or about October 26, 2014, Plaintiff submitted a written complaint
28  Defendant Wind Water and Defendant CEO Kelemen, stating, "September 5th, at Newport Beach

34

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 193

Yacht Club, you made unwanted advances towards me and touched me in an unprofessional manner (including kissing me and groping me). You are well aware that sexual assault and touching your employees is against the law."

165.    Plaintiff also complained of the sex/gender harassment and quid pro quo environment in her October 26, 2014 complaint letter, stating, "…you knowingly allow for an unhealthy and unprofessional work environment to exist where woman are treated with very little respect (calling us "girls" or "your girls" or "the girls"). You knowingly allow your male staff to be vile, disgusting and unprofessional. In any other organization this is clearly sexual harassment and failure of management's responsibility to create and sustain a professional work environment."

166.    Despite Plaintiff's complaint(s), Defendant Wind Water failed to take corrective and/or remedial measures. Instead, upon receipt of Plaintiff's complaint letter, Defendant Director Doan sent Plaintiff a text message in which she referred to Plaintiff as a "fucken whore" and accused her of lying. As such, Defendant Wind Water ratified and condoned Defendant CEO Kelemen's violent workplace conduct.

167.    Moreover, on a severe and/or pervasive basis beginning in or around August 2013 continuing at least through the time of Plaintiff's wrongful constructive termination on or about October 26, 2014, and continuing, Defendants Wind Water, CEO Kelemen and DOES 1 through 100, and each of them, harassed Plaintiff due to and substantially motivated by Plaintiff's race/national origin (Asian), as well as for advocating for and/or associating with other members of a protected class (Jewish) including the following actions, among others:

a)    As a means of harassing Plaintiff based on her race/national origin, Defendant CEO Kelemen often mockingly imitated clients with Asian accents in Plaintiff's presence.

b)    Defendant CEO Kelemen also often stated, in Plaintiff's presence and/or to her, "You know how the Chinese are" when referring to Chinese clients and their business transactions.

c)    Knowing Plaintiff's long-term boyfriend and son are both Jewish, Defendant CEO Kelemen often made inappropriate comments about Jewish clients to and/or in front

35

1    of Plaintiff. For example, Defendant CEO Kelemen repeatedly "He's just being a Jew"

2    whenever a client did not want to spend over a particular amount.

3        d)    Defendant CEO Kelemen also repeatedly stated, "He's a Jew, he won't spend that

4    kind of money on that deal" and "What do you expect, he's a Jew."

5    168.    As further alleged, at all times relevant herein, Plaintiff believes and further alleges

6    Defendant Wind Water and/or its agents/representatives failed to timely, properly, and/or

7    completely investigate the assault(s), battery(s), sexual battery, and false imprisonment Plaintiff

8    was subjected to, as well as the harassment, discrimination, and retaliation Plaintiff was routinely

9    subjected to based on her sex/gender and race/national origin and/or association and/or advocacy

10   of a member of a protected class.

11   169.    Defendants and DOES 1 through 100, and each of them, intended to cause and did cause

12   Plaintiff severe emotional distress as a result of the aforesaid unlawful conduct.

13   170.    Plaintiff did not consent to Defendants' conduct and said conduct was unprivileged.

14   171.    Defendants' conduct caused and continues to cause Plaintiff severe emotional distress.

15   172.    As a direct and legal result of the acts and omissions of Defendants and DOES 1 through

16   100, Plaintiff was rendered and/or may be rendered sick, sore, lame, disabled and/or disordered,

17   both internally and externally, and/or suffered and/or may suffer, among other things, numerous

18   internal injuries, severe fright, shock, pain, discomfort, and/or anxiety, as well as risk and fear of

19   sexually transmitted diseases.

20   173.    As a further legal result of the acts and omissions of Defendants and DOES 1 through

21   100, Plaintiff has been forced and/or will be forced to incur expenses for medical and/or

22   psychiatric care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is

23   informed and believes, and thereon alleges, she may be and/or will in the future be forced to

24   incur additional expenses of the same nature, all in an amount which is at present unknown.

25   Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

26   174.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since

27   said incidents has been and/or will be unable to engage fully in Plaintiff's occupation, and is

28   informed and believes, and thereon alleges, that Plaintiff will and/or may be fully and/or partially

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit I
Page 195

1 | incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in

2 | the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will

3 | pray leave of court to show the total amount of loss of earnings at the time of trial.

4 | 175.    As a further direct and legal result of the acts and conduct of Defendants and DOES 1

5 | through 100, Plaintiff has been caused and/or may be caused, and did suffer and/or may suffer,

6 | and continues to suffer severe and permanent emotional and/or mental distress and/or anguish,

7 | humiliation, embarrassment, fright, shock, pain, discomfort, and/or anxiety, as well as fear of

8 | sexually transmitted diseases. The exact nature and extent of said injuries is presently unknown

9 | to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

10 | 176.    The aforementioned acts of Defendants and DOES 1 through 100, and each of them, were

11 | willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful

12 | and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by

13 | managerial agents and employees of Defendant Wind Water and DOES 1 through 100, and with

14 | the express knowledge, consent, and/or ratification of managerial agents and employees of

15 | Defendant Wind Water and DOES 1 through 100, thereby justifying the awarding of punitive

16 | and exemplary damages in an amount to be determined at the time of trial pursuant to California

17 | Civil Code § 3294(a) and (b).

18 | 177.    By the aforesaid acts and conduct of Defendants and DOES 1 through 100, Plaintiff has

19 | been directly and legally caused to suffer actual damages pursuant to Cal. Civil Code § 3333

20 | including, but not limited to, loss of earnings and future earning capacity, medical and related

21 | expenses for care and procedures both now and in the future, attorney's fees, and/or other

22 | pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend

23 | when ascertained.

24 | 178.    Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

25 | //

26 | //

27 | //

28 | //

**X.**

**TENTH CAUSE OF ACTION**

**Retaliation & Wrongful Constructive Termination in Violation of Public Policy**

**Against Defendants WIND WATER & DOES 1 Through 100, Only**

179. Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this Complaint as though duly set forth in full herein.

180. Plaintiff was retaliated against and wrongfully constructively terminated from her employment on or about October 26, 2014 as a result of being subjected to assault(s), battery(s), sexual battery, and false imprisonment, as well as due to the harassment and discrimination Plaintiff was subjected to based on her sex/gender and race/national origin and/or association and/or advocacy of a member of a protected class, as alleged herein.

181. At all times relevant herein, Plaintiff was employed by Defendant Wind Water.

182. As alleged herein, the hostile work environment became so unbearable Plaintiff was forced to resign.

183. Indeed, Defendant Wind Water created and/or maintained intolerable and/or discriminatory working conditions that a reasonable person in Plaintiff's position would feel compelled to resign.

184. A reasonable person in the employee's position at the time of Plaintiff's resignation would have also resigned because of the aggravated and intolerable employment actions and conditions.

185. Defendant Wind Water and Defendant CEO Kelemen had actual knowledge of the intolerable actions and conditions and their impact on Plaintiff.

186. Plaintiff's wrongful constructive discharge caused and continues to cause Plaintiff emotional, mental, and/or physical harm.

187. At all times herein mentioned, the public policy of the State of California, as codified, expressed, and mandated by California Government Code §§ 12920 and 12940 et seq., was to prohibit employers from harassing, discriminating, and retaliating against and/or wrongfully constructively terminating any individual on the grounds of their sex/gender and/or race/national origin and/or association and/or advocacy of a member of a protected class. This public policy of

38

the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large. The policy inures to the benefit of the public and is fundamental and substantial.

188.    Accordingly, the actions of Defendant Wind Water and DOES 1 through 100, in retaliating and wrongfully constructively terminating Plaintiff on the grounds alleged and described herein were wrongful and failed to promote the welfare and well-being of the community at large.

189.    As a direct and legal result of the acts and omissions of Defendants and DOES 1 through 100, Plaintiff was rendered and/or may be rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and/or suffered and/or may suffer, among other things, numerous internal injuries, severe fright, shock, pain, discomfort, and/or anxiety.

190.    As a further legal result of the acts and omissions of Defendants and DOES 1 through 100, Plaintiff has been forced and/or will be forced to incur expenses for medical and/or psychiatric care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, she may be and/or will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

191.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents has been and/or will be unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will and/or may be fully and/or partially incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

192.    As a further direct and legal result of the acts and conduct of Defendants and DOES 1 through 100, Plaintiff has been caused and/or may be caused, and did suffer and/or may suffer, and continues to suffer severe and permanent emotional and/or mental distress and/or anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and/or anxiety. The exact nature and

1  extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the

2  same when they are ascertained.

3  193.    The aforementioned acts of Defendants and DOES 1 through 100, and each of them, were

4  willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful

5  and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by

6  managerial agents and employees of Defendant Wind Water and DOES 1 through 100, and with

7  the express knowledge, consent, and/or ratification of managerial agents and employees of

8  Defendant Wind Water and DOES 1 through 100, thereby justifying the awarding of punitive

9  and exemplary damages in an amount to be determined at the time of trial pursuant to California

10  Civil Code § 3294(a) and (b).

11  194.    By the aforesaid acts and conduct of Defendants and DOES 1 through 100, Plaintiff has

12  been directly and legally caused to suffer actual damages pursuant to Cal. Civil Code § 3333

13  including, but not limited to, loss of earnings and future earning capacity, medical and related

14  expenses for care and procedures both now and in the future, attorney's fees, and/or other

15  pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend

16  when ascertained.

17    195.    Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

18

19  WHEREFORE, PLAINTIFF JUNE NAGANO prays for judgment against the Defendants, and

20  each of them, as follows:

21      1.  For general damages in an amount within the jurisdictional limits of this Court;

22      2.  For special damages in an amount within the jurisdictional limits of this Court;

23      3.  For medical expenses and related items of expense, according to proof;

24      4.  For loss of earnings, according to proof;

25      5.  For consequential and incidental damages according to proof;

26      6.  For declaratory relief;

27      7.  For injunctive relief;

28

<div align="center">40</div>

1    8.  For punitive and exemplary damages against Defendants, according to proof, as provided

2  for by California <u>Civil Code</u> § 3294(a) and (b);

3    9.  For damages, penalties, reasonable attorney's fees, and costs of suit as provided for by

4  California <u>Government Code</u> § 12965(b);

5    10. For damages, penalties, reasonable attorney's fees, and costs of suit as provided for by

6  California <u>Civil Code</u> § 3294(a) and (b);

7    11. For damages, penalties, reasonable attorney's fees, and costs of suit as provided for by

8  California <u>Civil Code</u> § 3333;

9    12. For such other and further relief as the Court may deem just and proper.

10

11  Dated: September 4, 2015               **REISNER & KING LLP**

12

13                      By: _____

14                    ALISA KHOUSADIAN, ESQ.

15                    Attorneys for PLAINTIFF
                         JUNE NAGANO

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">41</div>

# EXHIBIT A

Exhibit I
Page 201

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

**AMENDED**

July 08, 2015

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 601795-168158-R
Right to Sue: Nagano / Wind Water Realty Advisers Inc

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing

1
2
3
4
5

# COMPLAINT OF EMPLOYMENT DISCRIMINATION

## BEFORE THE STATE OF CALIFORNIA

### DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)

6
7
8
9

In the Matter of the Complaint of                    DFEH No. 601795-168158-R
June Nagano, Complainant.
C/o Reisner And King 14724 Ventura Blvd., Suite
1210
Sherman Oaks California 91403

10

vs.

11
12
13

Wind Water Realty Advisers Inc, Respondent.
9160 Irvine Center Dr. Suite 200
Irvine,  California 92618

14
15

Complainant alleges:

16

1. Respondent **Wind Water Realty Advisers Inc** is a subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

17
18
19
20
21
22

2. On or around October 30, 2014, complainant alleges that respondent took the following adverse actions against complainant: Discrimination, Harassment, Retaliation Asked impermissible non-job-related questions, Demoted, Denied a good faith interactive process, Denied a work environment free of discrimination and/or retaliation, Denied employment, Denied equal pay, Denied promotion, Denied reinstatement, Forced to quit, Terminated, Other, physical harm due to sexual assault and battery, bruises, cuts, and other injuries from violent acts, Injuries to the genitals and anus, being exposed to diseases that can be passed on during sexual intercourse, and the fear of being exposed to these sexually transmitted diseases, denial of review and bonus, created an intolerable working environment. Complainant believes respondent committed these actions because of their: Ancestry, Association with a member of a protected class, Color, Disability, Engagement in Protected Activity, Marital Status, National Origin - including language use restrictions, Race, Religion, Sex- Gender, Other Protesting, complaining, sexual assault and battery,  forced oral copulation, sexual intercourse non-consensual penetration of vagina and anus, quid pro quo, retaliation, accused of lying everyday and called a fucken whore, I was plied with alcohol and/or other intoxicating liquids which placed me in a dangerous, weakened and susceptible state, and was sexually assaulted and battered as a direct result..

DFEH 802-1

-5-
*Complaint – DFEH No. 601795-168158-R*

Date Filed: July 08, 2015

Date Amended: July 10, 2015

Exhibit I
Page 203

3. Complainant June Nagano resides in the City of Sherman Oaks, State of California.  If complaint includes co-respondents please see below.

-6-

*Complaint – DFEH No. 601795-168158-R*

DFEH 902-1

Date Filed: July 08, 2015

Date Amended: July 10, 2015

Exhibit I
Page 204

**Co-Respondents:**
Wind Water Realty Inc

9160 Irvine Center Dr. Suite 200
Irvine  California 92618

Tibor Kelemen
9160 Irvine Center Dr. Suite 200
Irvine  California 92618

Tam Doan
9160 Irvine Center Dr. Suite 200
Irvine  California 92618

Wind Water Development Advisors, Inc.

9160 Irvine Center Dr. Suite 200
Irvine  California 92618

DFEH 902-1

-7-

*Complaint – DFEH No. 601795-168158-R*

Date Filed: July 08, 2015

Date Amended: July 10, 2015

Exhibit I
Page 205

1
2   **Additional Complaint Details:**
3
4   I was sexually assaulted and subjected to sexual battery, forced oral copulation, sexual intercourse non-consensual penetration of vagina and anus, quid pro quo, hostile work environment, harassment, discrimination and retaliation, and wrongful constructive termination, because of my, or association with others, sex, gender, race, national origin, religion  and protests, complaints and for refusing the sexual advances and pursuits of my employer.  I was accused of lying everyday and called a fucken whore.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

DFEH 802-1

-8-

*Complaint – DFEH No. 601795-168158-R*

Date Filed: July 08, 2015

Date Amended: July 10, 2015

Exhibit I
Page 206

## VERIFICATION

1

2   I, **Adam Reisner**, am the Attorney for Complainant in the above-entitled complaint.   I have read the foregoing
complaint and know the contents thereof.   The same is true of my own knowledge, except as to those matters
3   which are therein alleged on information and belief, and as to those matters, I believe it to be true.

4   On July 08, 2015, I declare under penalty of perjury under the laws of the State of California that the foregoing
is true and correct.

5
                                                                                 Sherman Oaks, California
6                                                                                       **Adam Reisner**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DFEH 902-1

-9-

*Complaint – DFEH No. 601795-168158-R*

Date Filed: July 08, 2015

Date Amended: July 10, 2015

Exhibit I
Page 207

# EXHIBIT B

Exhibit I
Page 208

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                           DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

**AMENDED**

July 08, 2015

June Nagano
C/o Reisner And King 14724 Ventura Blvd., Suite 1210
Sherman Oaks California 91403

RE:  **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 601795-168158-R
Right to Sue: Nagano / Wind Water Realty Advisers Inc

Dear June Nagano,

This letter informs you that the above-referenced complaint was filed with the Department of Fair
Employment and Housing (DFEH) has been closed effective July 08, 2015 because an immediate Right
to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision
(b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against
the person, employer, labor organization or employment agency named in the above-referenced
complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity
Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure
or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

Exhibit I
Page 209